IDAHO SPORTING CONGRESS INC.; The Ecology Center, Plaintiffs–Appellants,

v.

David ALEXANDER, Supervisor, Payette National Forest; United States Forest Service, an agency of the U.S. Department of Agriculture, Defendants–Appellees,

Intermountain Forest Industry Association; Boise Cascade Corporation; Evergreen Forest Products, Inc., Intervenors–Appellees.

No. 99–35847.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 5, 2000

Filed Aug. 17, 2000

Thomas J. Woodbury, Boise, Idaho, for the appellants.

Todd S. Kim and James C. Kilbourne, United States Department of Justice, Environment & Natural Resources Division, Washington, D.C., for the appellees.

Bruce M. Smith, Moore Smith Buxton & Turcke, Chtd., Boise, Idaho, for the intervenors.

Before: HUG, Chief Judge, BRUNETTI and GOULD, Circuit Judges.

HUG, Chief Judge.

Idaho Sporting Congress and the Ecology Center (collectively, "ISC") appeal the district court's denial of their motion for a preliminary injunction to prevent the United States Forest Service ("Forest Service") from proceeding with certain timber sales in the Payette National Forest ("PNF"). ISC claims that the Environmental Assessments and Environmental Impact Statements prepared by the Forest Service in connection with these sales do not comply with the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 et seq., the National Forest Management Act ("NFMA"), 16 U.S.C. § 1600 et seq., and the Forest Service's own Land Resource Management Plan ("LRMP") for the PNF. We have jurisdiction pursuant to 28 U.S.C. § 1292(a)(1). Because we find that ISC has raised serious questions and there is a possibility of irreparable harm, we reverse and remand to the district court with instructions to grant a preliminary injunction pending a final determination of the merits of ISC's claims.

## FACTUAL AND PROCEDURAL HISTORY

The Payette National Forest encompasses approximately 2.3 million acres of land in central Idaho. This suit arises out of the Forest Service's proposal to permit commercial logging in five areas of the forest: Filly Creek, Rubicon, West Pine

Skyline, Fourmile, and North Round Valley. The Forest Service completed Environmental Assessments ("EA"s) for the West Pine Skyline, Filly Creek and Rubicon timber sales, and Environmental Impact Statements ("EIS"s) for the Fourmile and North Round Valley sales. For each EA, the Forest Service issued a Finding of No Significant Impact ("FONSI") and a decision notice approving the logging. For each EIS, the Forest Service issued a Record of Decision selecting an alternative that approved the logging.

After the EAs and EISs for all of the sales except North Round Valley were completed and the sales were approved, we decided *Neighbors of Cuddy Mountain v. United States Forest Service*, 137 F.3d 1372 (9th Cir.1998).[1] In *Cuddy Mountain*, we addressed the adequacy of an EIS prepared by the Forest Service in connection with a proposed timber sale in the Grade/Dukes area of the PNF. We found that the EIS was inadequate under NFMA, because it failed to show that the proposed logging would not reduce old growth habitat below the levels specified in the PNF's LRMP as necessary to sustain species such as the pileated woodpecker. *See* 137 F.3d at 1377–78. We also found that the EIS was inadequate under NEPA, because it failed to evaluate adequately the cumulative effects of three other nearby timber sales, and it failed to take a "hard look" at measures to mitigate the impact of the logging. *See id.* at 1378–81. Idaho Sporting Congress was a plaintiff in *Neighbors of Cuddy Mountain.*

Following the decision in *Neighbors of Cuddy Mountain*, ISC filed a lawsuit [referred to hereinafter as "*ISC I* "] to block nine additional timber sales in the PNF, including the West Pine Skyline, Filly Creek, Rubicon, Fourmile, and North Round Valley sales. ISC alleged that the Forest Service had failed to comply with the requirements of NFMA and NEPA in preparing the EAs and EISs for these

sales, just as it had failed to do so with the Grade/Dukes sale at issue in *Cuddy Mountain*. The district court denied ISC's motion for a preliminary injunction. ISC appealed, and we affirmed. *See Idaho Sporting Congress v. Alexander*, 173 F.3d 860, No. 99–35047, 1999 WL 170879 (9th Cir. Mar.23, 1999) (unpublished disposition).

ISC and the Forest Service subsequently agreed to a settlement. The settlement provided, *inter alia*, that ISC's lawsuit would be dismissed without prejudice and that the Forest Service would "complete additional environmental documentation" of the timber sales "in the form of supplemental information reports (SIR's) that will examine whether further environmental review and documentation is required." The settlement further provided that the SIRs would be circulated in draft form for public review and comment. The settlement acknowledged the right of ISC to file a new lawsuit challenging the "additional environmental documentation," but specified that any new suit must be filed within ten calendar days of the date the final SIRs were issued.

The Forest Service completed the SIRs for the five timber sales at issue in this case on May 28, 1999. For each sale, the SIRs found that the original EA or EIS "adequately displayed the effects of the Selected Alternative on the environment" and that "[n]othing in the new information demonstrates that the project will affect the quality of the human environment in a significant manner or significant extent not already considered in the underlying documents." The SIRs all conclude that there is "no need to correct, supplement, or revise the environmental document or the [Forest Service's] decision."

On June 7, 1999, ISC filed the present action under the Administrative Procedures Act ("APA"), 5 U.S.C. § 701 et seq., alleging substantive violations of NEPA

---

**1.** The final EIS and Record of Decision for the North Round Valley sale were issued in July 1998, four months after our decision in *Cuddy Mountain.*

and NFMA, and requesting that the district court enjoin the Filly Creek, West Pine Skyline and Rubicon timber sales. ISC filed an amended complaint on June 14, 1999, adding challenges to the Fourmile and North Round Valley sales. The Intermountain Forest Industry Association, Boise Cascade Corporation, and Evergreen Forest Products, Inc. requested and were granted permission to intervene.

On July 12, 1999, the district court denied ISC's motion for a temporary restraining order. The district court subsequently denied ISC's motion for reconsideration and for a preliminary injunction. ISC timely filed a notice of appeal pursuant to Ninth Circuit Rule 3–3. On September 30, 1999, we granted ISC's emergency motion for an injunction pending the resolution of this appeal and stayed any action toward implementing the challenged timber sales.

## DISCUSSION

### I.

■ To be entitled to preliminary injunctive relief, ISC must demonstrate either a combination of probable success on the merits and the possibility of irreparable injury or that serious questions are raised and the balance of the hardships tips in its favor. *See Roe v. Anderson,* 134 F.3d 1400, 1402 (9th Cir.1998). "These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." *Id.* (quoting *United States v. Nutri-cology, Inc.,* 982 F.2d 394, 397 (9th Cir.1992)).

■ We review the district court's denial of ISC's motion for abuse of discretion. *See Bay Area Addiction Research and Treatment, Inc. v. City of Antioch,* 179 F.3d 725, 732 (9th Cir.1999); *Brookfield Communications, Inc. v. West Coast Entertainment Corp.,* 174 F.3d 1036, 1045–46 (9th Cir.1999). Because the district court necessarily abuses its discretion if it bases its ruling on an erroneous view of the law, however, we review the legal bases for the district court's decision de novo. *See Brookfield Communications, Inc.,* 174 F.3d at 1046; *Foti v. City of Menlo Park,* 146 F.3d 629, 634–35 (9th Cir.1998); *FDIC v. Garner,* 125 F.3d 1272, 1276 (9th Cir. 1997).

### II.

ISC argues that preliminary injunctive relief is warranted, because the Forest Service's original EAs and EISs for the Filly Creek, Rubicon, West Pine Skyline, Fourmile, and North Round Valley timber sales are deficient as a matter of law under our decision in *Cuddy Mountain,* and because the Forest Service is not permitted under NEPA to use Supplemental Information Reports to correct the deficiencies. ISC contends that the Forest Service must reopen the administrative record and prepare supplemental EAs and EISs before the timber sales can proceed.

The district court agreed with ISC's first argument, finding that standing alone the Forest Service's original NEPA documents "clearly fail" to meet the requirements of *Cuddy Mountain.* However, the court disagreed with ISC as to the proper role of the Forest Service's SIRs. The district court held that the Forest Service is permitted under NEPA to use a process such as an SIR, instead of a supplemental EA or EIS, to reevaluate an existing EA or EIS. Because ISC did not challenge the substance of the SIRs in its motion for a preliminary injunction, the court concluded that ISC had failed to raise a serious question on the merits.

ISC argues on appeal that the district court's denial of its motion for a preliminary injunction was based on an erroneous interpretation of NEPA, and therefore an abuse of discretion. For the following reasons, we agree.

### A.

■ Supplemental Information Reports are nowhere mentioned in NEPA or in the

regulations implementing NEPA promulgated by the Council on Environmental Quality ("CEQ"). *See, e.g.,* 40 C.F.R. § 1508.10 (defining the term "environmental document" as including Environmental Assessments, Environmental Impact Statements, Findings of No Significant Impact, and Notices of Intent). Courts nonetheless have recognized a limited role within NEPA's procedural framework for SIRs and similar "non-NEPA" environmental evaluation procedures. Specifically, courts have upheld agency use of SIRs and similar procedures for the purpose of determining whether new information or changed circumstances require the preparation of a supplemental EA or EIS.[2] *See Price Rd. Neighborhood Ass'n v. United States Dep't of Transp.,* 113 F.3d 1505, 1510 (9th Cir.1997) (hereinafter *Price Road*) (holding that when faced with a project change, the Federal Highway Administration may conduct an environmental "reevaluation" "to determine the significance of the new design's environmental impacts and the continuing validity of its initial EA"); *see also Marsh v. Oregon Natural Resources Council,* 490 U.S. 360, 383–85, 109 S.Ct. 1851, 104 L.Ed.2d 377 (1989) (upholding the Army Corps of Engineers' use of SIR to analyze significance of new reports questioning the environmental impact of a dam project); *Friends of the Bow v. Thompson,* 124 F.3d 1210, 1218–19 (10th Cir.1997) (upholding use of SIR to evaluate significance of new survey of area to be logged); *Laguna Greenbelt, Inc. v. United States Dep't of Transp.,* 42 F.3d 517, 529–30 (9th Cir.1994) (upholding use of "Memorandum of Record" to assess significance of recent wildfires in project area); *California v. Watt,* 683 F.2d 1253,

1267–68 (9th Cir.1982), *rev'd on other grounds sub. nom., Secretary of the Interior v. California,* 464 U.S. 312, 104 S.Ct. 656, 78 L.Ed.2d 496 (1984) (upholding use of "Secretary Issue Document" to evaluate significance of new size estimates for offshore oil and gas deposits). We have permitted agencies to use SIRs for this purpose, in part, because NEPA and the CEQ regulations are silent on the issue of how agencies are to determine the significance of new information. *See Price Rd. Neighborhood Ass'n,* 113 F.3d at 1510.

In condoning the use of SIRs, however, we have repeatedly warned that once an agency determines that new information is significant, it must prepare a supplemental EA or EIS; SIRs cannot serve as a substitute. In *Price Road,* for example, we explained that "if the environmental impacts resulting from the design change are significant or uncertain, as compared with the original design's impacts, a supplemental EA is required." 113 F.3d at 1508–09. We also emphasized "that the environmental reevaluation was used to make the initial significance determination, *not to supplant any documentation that would be required if the threshold were met.*" *Id.* at 1510 (emphasis added). *Accord Marsh,* 490 U.S. at 385, 109 S.Ct. 1851 (noting "that if all of the information ... was both new and accurate, the Corps would have been required to prepare a ... supplemental EIS"); *Watt,* 683 F.2d at 1268 (stating that a "Secretary Issue Document" "cannot substitute for a supplemental EIS").

Here, the Forest Service is not using the SIRs wholly for the purpose of evaluating the significance of new information or changed circumstances.[3] Instead, the For-

---

**2.** NEPA imposes on federal agencies a continuing duty to supplement existing EAs and EISs in response to "significant new circumstances or information relevant to environmental concerns and bearing on the proposed action or its impacts." 40 C.F.R. § 1509(c)(1)(ii); *see also Marsh v. Oregon Natural Resources Council,* 490 U.S. 360, 372–73, 109 S.Ct. 1851, 104 L.Ed.2d 377 (1989); *Idaho Sporting Congress v. Thomas,* 137 F.3d 1146, 1152 (9th Cir.1998) (holding that the

standard for supplementing an EA is the same as for an EIS).

**3.** The Forest Service's SIRs are devoted in part to discussing information that is truly new. For example, the SIR for the Fourmile timber sale discusses the proposed listing of the northern Idaho ground squirrel and the Canadian lynx under the Endangered Species Act. The SIR also discusses the listing of the bull trout as threatened. An SIR is the appro-

est Service is using the SIRs to present information and analysis that it was required, but according to the finding of the district court, failed to include in its original NEPA documents. In *Cuddy Mountain*, we held that before approving a timber sale in the PNF, the Forest Service is required (1) to ensure that after the sale at least 5% of the timber in each affected "home range"[4] is old growth timber and that at least 2.5% is old growth habitat; (2) to address the impacts of other sales affecting the same home ranges as the sale at issue; and (3) to take a hard look at measures to mitigate the logging's impact. *See* 137 F.3d at 1377–80. These requirements are not "new" information; nor can their significance be questioned. Although *Cuddy Mountain* may have been decided after the Forest Service prepared its original EAs and EISs for the timber sales at issue in this case, our decision did not create these requirements. They stem from NEPA, NFMA and the Forest Service's own LRMP. The Forest Service knew or should have known that it needed to provide this information and analysis at the time it prepared the original EAs and EISs.

It is inconsistent with NEPA for an agency to use an SIR, rather than a supplemental EA or EIS, to correct this type of lapse. NEPA is a procedural statute, and we have held that "agency action taken without observance of the procedure required by law will be set aside." *Metcalf v. Daley*, 214 F.3d 1135, 1141 (9th Cir.2000) (quoting *Save the Yaak Committee v. Block*, 840 F.2d 714, 717 (9th Cir. 1988)). Yet if the Forest Service were permitted to correct deficiencies in an EA or an EIS by means of an SIR or another non-NEPA procedure, the regulations governing the supplementation of NEPA documents promulgated by the CEQ, as well as the Forest Service's own rules on the issue, would be superfluous. *See, e.g.,* 40 C.F.R. 1502.9(c)(4) (stating that agencies "[s]hall prepare, circulate, and file a supplement to a[n environmental impact] statement *in the same fashion* ... as a draft or final statement" (emphasis added)); Forest Service Handbook 1909.15 Chs. 20, 40 (detailing procedures to be followed when preparing EAs and EISs); *see also Oregon Envtl. Council v. Kunzman*, 817 F.2d 484, 492(9th Cir.1987) ("[CEQ's] regulations govern the form, content, and preparation of an EIS.").

■ Compliance with NEPA's procedures is not an end unto itself. Rather, as the Supreme Court has explained, it is through NEPA's "action forcing" procedures that "[t]he sweeping policy goals announced in § 101 of NEPA are ... realized." *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 350, 109 S.Ct. 1835, 104 L.Ed.2d 351 (1989). NEPA and the CEQ regulations implementing NEPA are intended to ensure that environmental considerations are "infused into the ongoing programs and actions of the Federal Government." *Marsh*, 490 U.S. at 371 n. 14, 109 S.Ct. 1851 (internal quotation and citation omitted). To this end, we have held that EAs and EISs "must be 'prepared early enough so that [they] can serve practically as an important contribution to the decisionmaking process and will not be used to rationalize or justify decisions already made.'" *Save the Yaak*, 840 F.2d at 718 (quoting 40 C.F.R. § 1502.5 (1987)); *see also Metcalf*, 214 F.3d at 1145

---

priate means by which to make an initial evaluation of the significance of this type of information, and ISC does not appear to challenge this use of the SIRs.

**4.** The PNF's LRMP divides the forest for environmental evaluation purposes into "theoretical pileated woodpecker home range[s]," each of which is approximately 10 miles in diameter. *See Neighbors of Cuddy Mountain*, 137 F.3d at 1377–78 & n. 4. The pileated woodpecker is a "management indicator species" for old growth habitat. *See id.* at 1377. A management indicator species "is used as a bellwether ... for the other species that have the same special habitat needs or population characteristics." *Inland Empire Public Lands Council v. United States Forest Service*, 88 F.3d 754, 762 n. 11 (9th Cir.1996).

("NEPA's effectiveness depends entirely on involving environmental considerations in the initial decisionmaking process."). "The phrase 'early enough' means 'at the earliest possible time to insure that planning and decisions reflect environmental values.'" *Metcalf,* 214 F.3d at 1142 (quoting *Andrus v. Sierra Club,* 442 U.S. 347, 351, 99 S.Ct. 2335, 60 L.Ed.2d 943 (1979)).

The SIRs at issue in this case do not satisfy these timing requirements. The Forest Service did not compile the information and analysis presented in the SIRs "at the earliest possible time." The record indicates that the SIRs were prepared in response to litigation, years after the original decisions to approve the timber sales were made. Furthermore, although the public was given an opportunity to comment on the SIRs, the Forest Service's decision making process was not formally reopened and no administrative appeal of the SIRs was permitted. The SIRs therefore do not remedy the fact that at the time the Forest Service originally approved the timber sales, it did not have available all the information and analysis our decision in *Cuddy Mountain* says it was required to consider. *Cf. Metcalf,* 214 F.3d at 1145 (concluding that federal agencies violated NEPA's timing requirements by preparing NEPA assessment after making decision to support whaling by Indian tribe); *Save the Yaak,* 840 F.2d at 718–19 (holding that Forest Service violated NEPA's timing requirements by preparing EAs for road building project after project had already begun).

Our decision in *Half Moon Bay Fishermans' Marketing Ass'n v. Carlucci,* 857 F.2d 505 (9th Cir.1988), is consistent with this conclusion. *Half Moon Bay* involved a challenge to a decision by the Army Corps of Engineers and the Port of Oakland to dump materials dredged from Oakland's Inner Harbor Channel into an area of ocean off Half Moon Bay. We found that there were "substantial omissions" in the portion of the Corps of Engineers' final supplemental EIS dealing with environ-mental monitoring that "would require us to conclude that the defendants had violated NEPA ..." if the EIS was the last word on the issue. *Id.* at 511. Yet, because the Environmental Protection Agency had adequately addressed the monitoring issue in a separate report, which the Corps of Engineers incorporated into its final decision, we concluded that there was no NEPA violation. *See id.* at 512.

The Forest Service asserts that our decision in *Half Moon Bay* demonstrates that an inadequate EIS may be supplemented by a procedure other than a supplemental EA or EIS. Unlike the SIRs in this case, however, the EPA report in *Half Moon Bay* was produced *before* the Corps of Engineers had issued its final decision, and we found that the Corps of Engineers had considered the EPA's suggestions in making its decision. *See id.* Thus, in *Half Moon Bay,* the agency's decision maker had all of the required information at the time a final decision on the challenged project was made. *See id.* Our decision in *Half Moon Bay* provides no support for the Forest Service's *post-hoc* use of the SIRs in this case.

**B.**

■ The Forest Service argues that even if the use of SIRs to supplement EAs and EISs is generally not acceptable under NEPA, ISC should not be permitted to challenge the Forest Service's use of the SIRs in this case because ISC stipulated to this use when it agreed to settle *ISC I.* In making this argument, the Forest Service relies on the language in the parties' settlement agreement specifying that the Forest Service would complete additional environmental documentation of the timber sales "in the form of supplemental information reports (SIR's)."

We agree with the Forest Service that the propriety of its use of the SIRs in this case may be affected by the settlement agreement in *ISC I.* However, the district court did not deny ISC's motion for a preliminary injunction on the basis of the

settlement agreement. The court based its decision on its interpretation of NEPA, which we have concluded is erroneous. The meaning of the agreement and the intent of the parties remains unresolved. Consequently, given the district court's finding that the Forest Service's original EAs and EISs "clearly fail" to satisfy the requirements of *Cuddy Mountain,* and because it is otherwise inconsistent with the structure and purpose of NEPA for the Forest Service to use SIRs to supplement these EAs and EISs, we conclude that ISC has succeeded in raising serious questions on the merits.

### III.

 Finally, the government argues that the district court's denial of preliminary injunctive relief should be upheld regardless of the merits of ISC's claims because ISC has failed to demonstrate the possibility of irreparable harm or that the balance of hardships tips decidedly in its favor. We disagree.

The Supreme Court has rejected a presumption of irreparable injury when an agency fails to evaluate thoroughly the environmental impact of a proposed action. *See Amoco Prod. Co. v. Village of Gambell,* 480 U.S. 531, 545, 107 S.Ct. 1396, 94 L.Ed.2d 542 (1987). However, the Court also has observed that "[e]nvironmental injury, by its nature, can seldom be adequately remedied by money damages and is often permanent or at least of long duration, i.e., irreparable." *Id.* "Consequently, when environmental injury is 'sufficiently likely, the balance of harms will usually favor the issuance of an injunction to protect the environment.'" *Sierra Club v. United States Forest Service,* 843 F.2d 1190, 1195 (9th Cir.1988) (quoting *Amoco,* 480 U.S. at 545, 107 S.Ct. 1396); *see also Save the Yaak,* 840 F.2d at 722 (holding same).

Such is the case here. The Forest Service has admitted in its brief that at the time we granted ISC's motion for an injunction pending appeal, logging activities were occurring at Filly Creek and could have begun soon at Rubicon and Fourmile. Additionally, the SIR for the West Pine Skyline timber sale reveals that logging at that site is already at least 75% complete. This evidence of environmental harm is sufficient to tip the balance in favor of injunctive relief. Although the record indicates that a preliminary injunction could present a financial hardship to the Forest Service, the appellee-intervenors, and the communities in and around the PNF, this possible financial hardship is outweighed by the fact "[t]he old growth forests plaintiffs seek to protect would, if cut, take hundreds of years to reproduce." *Cuddy Mountain,* 137 F.3d at 1382 (quoting *Portland Audubon Soc'y v. Lujan,* 884 F.2d 1233, 1241 (9th Cir.1989)).

### CONCLUSION

Because ISC has raised serious questions regarding the Forest Service's use of Supplemental Information Reports to comply with our decision in *Cuddy Mountain,* and there is a possibility of irreparable environmental harm, the district court should have granted ISC's motion for a preliminary injunction. The denial of ISC's motion was an abuse of discretion. Accordingly, we REVERSE and REMAND with instructions to grant a preliminary injunction pending a final determination of the merits of ISC's claims. On remand, the district court may consider whether parties can stipulate to the use of SIRs to supplement NEPA documents, and whether ISC and the Forest Service did in fact do so in their agreement settling *ISC I.*

REVERSED and REMANDED.