**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| BESS BAIR; TRISHA LEE LOTUS; JEFFREY HEDIN; DAVID SPREEN; CENTER FOR BIOLOGICAL DIVERSITY; ENVIRONMENTAL PROTECTION INFORMATION CENTER; CALIFORNIANS FOR ALTERNATIVES TO TOXICS; FRIENDS OF DEL NORTE, *Plaintiffs-Appellees*, | No. 19-16478 D.C. No. 3:17-cv-06419-WHA |
| v. | OPINION |
| CALIFORNIA DEPARTMENT OF TRANSPORTATION; TOKS OMISHAKIN, in his capacity as Director of the California Department of Transportation, *Defendants-Appellants*. | |

Appeal from the United States District Court
for the Northern District of California
William Alsup, District Judge, Presiding

Argued and Submitted October 13, 2020
San Francisco, California

Filed December 2, 2020

Before:  Ferdinand F. Fernandez, Kim McLane Wardlaw,
         and Daniel P. Collins, Circuit Judges.

Opinion by Judge Fernandez;
Concurrence by Judge Wardlaw

## SUMMARY[*]

### Environmental Law

Reversing the district court's judgment in favor of plaintiffs, vacating an injunction, and remanding, the panel held that the California Department of Transportation complied with the National Environmental Policy Act in relying on an Environmental Assessment for a proposed highway improvement project within Richardson Grove State Park.

Granting partial summary judgment in favor of plaintiffs, the district court concluded that Caltrans had failed adequately to consider certain issues and therefore had not taken the requisite "hard look" at the environmental impacts of the Project, and the 2010 Environmental Assessment (EA), as supplemented and revised, was inadequate.  The district court concluded that substantial questions had been raised as to the effects of the Project, and it ordered Caltrans to prepare an environmental impact statement (EIS).  The district court enjoined Caltrans from proceeding with the Project until the EIS was finalized.

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

Reversing, the panel held that Caltrans based its 2017 finding of no significant impact (FONSI) upon the analysis contained in the revised EA, which incorporated the analysis of the 2010 EA and the 2013 Revised Supplemental EA. Because Caltrans' 2010 EA, as supplemented and revised, constituted the "hard look" at the Project's effects required by NEPA, Caltrans' issuance of the 2017 FONSI was reasonable. The panel held that none of the purported inadequacies identified by the district court rendered the revised EA arbitrary or capricious.

Concurring, Judge Wardlaw wrote that she concurred in the majority opinion, and Caltrans did not violate NEPA because its reliance on the EA was not arbitrary and capricious. Judge Wardlaw wrote separately to emphasize that: (1) the administrative record was painful to review; (2) if significant new information is discovered during the proposed construction or substantial project changes are made, Caltrans may need to reevaluate its analysis; and (3) the Project seems likely to provide new data on the effects of construction on old-growth redwoods, which could prove important to future decisions surrounding these historic trees.

**COUNSEL**

Stacy Jayne Lau (argued), Michael A.G. Einhorn, and Angela Wuerth; Lucille Y. Baca, Assistant Chief Counsel; G. Michael Harrington, Deputy Chief Counsel; Erin E. Holbrook, Chief Counsel; State of California Department of Transportation – Legal Division, Oakland, California; for Defendants-Appellants.

Stuart G. Gross (Argued) and Timothy S. Kline, Gross & Klein LLP, San Francisco, California; Todd R. Gregorian and Garner F. Kropp, Fenwick & West LLP, San Francisco, California; for Plaintiffs-Appellees.

**OPINION**

FERNANDEZ, Circuit Judge:

This environmental appeal arises from a highway improvement project proposed by the California Department of Transportation (collectively with its director, Toks Omishakin, Caltrans). Plaintiffs Bess Bair, Trisha Lee Lotus, Jeffrey Hedin, David Spreen, the Center for Biological Diversity, the Environmental Protection Information Center, Californians for Alternatives to Toxics, and Friends of del Norte (collectively, Bair[1]) challenged the project on a variety of grounds, including the failure to comply with the National Environmental Policy Act of 1969, Pub. L. No. 91–190, 83 Stat. 852 (1970) (NEPA). The district court determined that Caltrans arbitrarily and capriciously relied upon the 2010 Environmental Assessment (2010 EA), as supplemented and revised, because, it held, that document failed to sufficiently consider certain "significant issues." *Bair v. Cal. State Dep't of Transp.*, 385 F. Supp. 3d 878, 886 (N.D. Cal. 2019). The district court also enjoined Caltrans from continuing the project until it finalized an appropriate environmental impact statement (EIS). It then entered a final judgment against Caltrans. We reverse and remand.

---

[1] While the plaintiffs other than Bair have changed from time to time during the more than ten years of litigation that has ensued, unless otherwise noted, the plaintiffs will hereafter be referred to as Bair.

## I. BACKGROUND

Richardson Grove State Park (the Grove) comprises approximately 2,000 acres within the redwood forests of southern Humboldt County, California, and is bisected by United States Highway 101. Within the Grove, Highway 101 is a two-lane highway "on a nonstandard alignment" with tight curves and narrow travel lanes and roadway shoulders. A number of trees, including old-growth redwood trees,[2] abut the roadway as it meanders through the Grove. In light of antiquated roadway design, there are restrictions on the types of vehicles that may travel that portion of the highway. Sixty-five foot long "California Legal" trucks are permitted, but industry-standard Surface Transportation Assistance Act of 1982[3] (STAA) trucks generally are not. STAA trucks are longer than California Legal trucks and can carry larger cargo volumes, although both classes of trucks are subject to the same weight limitation. Because of their longer length, STAA trucks navigating the highway's tight curves frequently "off-track" into the opposing traffic lane or onto the roadway shoulder.

The STAA truck restriction at the Grove is the only remaining impediment to STAA trucks traveling into Humboldt County via Highway 101. Caltrans has long sought to remove that roadblock, but abandoned previous efforts because of the substantial projected expense, among other things. In 2007, Caltrans learned that the existing roadway could be strategically widened to render it accessible

---

[2] Caltrans defined "old growth redwood[s]" as "trees over 30 inches in diameter at breast height (4.5 feet above ground level)."

[3] Pub. L. No. 97–424, 96 Stat. 2097 (1983).

to STAA trucks, and Caltrans developed the Richardson Grove Operational Improvement Project (the Project) to do just that. The Project involves slightly widening the roadway and straightening some curves in certain locations along a one-mile stretch of Highway 101, largely within the Grove. Its purposes are to accommodate STAA truck travel, improve the safety and operation of Highway 101, and improve the movement of goods into Humboldt County. The speed limit would remain unchanged at thirty five miles per hour. Caltrans assumed responsibility for obtaining environmental approval for the Project pursuant to NEPA. *See* 23 U.S.C. § 327(a)(2)(A), (B)(i).

## A.  The Project as originally proposed in 2010

The original 2010 EA included extensive analysis of the Project's environmental effects and efforts to minimize those effects (developed in consultation with the California Department of Parks and Recreation (State Parks)). More than 100 pages of the 2010 EA were devoted to analyzing various environmental impacts, such as the effects on the nearby South Fork Eel River, the Grove and its recreation facilities, economic growth, traffic, water quality, noise, local plant and animal species (particularly old-growth redwood trees), and protected or threatened species.

Caltrans ultimately determined that the impacts to the Grove would be minor, and would primarily consist of "tree removal resulting from cuts and fills that are necessary to accommodate the highway improvements," as well as the

effect on trees whose structural root zones[4] were within the construction area. Although some trees would be removed, none of those would be old-growth redwoods. And while construction would occur in the structural root zones of fewer than 80 old-growth redwoods, plans were made to mitigate its effects. For example, Caltrans proposed to increase the height of the roadbed where possible to avoid severing tree roots, use a thinner roadbed material to allow greater permeability, conduct some construction (excavation) by hand, water trees during the summer, and remove some invasive plants. In light of those measures, both the Caltrans arborist (Darin Sullivan) and the arborist hired by Save the Redwoods League (Dennis Yniguez) determined that the Project as proposed in 2010 "would not significantly impact the root health of the old growth trees adjacent to the construction." Caltrans issued the EA and Finding of No Significant Impact (FONSI) for the Project in May 2010.

## B. Past litigation

Bair filed suit regarding the Project in both 2010[5] and 2014,[6] each time making similar claims. In the First Litigation, the district court granted partial summary judgment to the plaintiffs and ordered Caltrans to undertake

---

[4] As defined in the 2010 EA, "the structural root zone is a circular area with the tree trunk at the center with a radius equal to three times the diameter of the tree trunk measured at 4.5 feet above ground level," and "is where most of the [tree's] nutrient and water absorption occurs."

[5] *Bair v. Cal. Dep't of Transp.*, No. 3:10-cv-04360-WHA (N.D. Cal. 2010) (the First Litigation).

[6] *Bair v. Cal. Dep't of Transp.*, No. 3:14-cv-03422-WHA (N.D. Cal. 2014) (the Second Litigation).

additional studies, such as preparing new maps of each old-growth redwood tree, its root health zone, and the environmental impacts to each tree. *Bair*, 385 F. Supp. 3d at 883. Caltrans then revised its analysis accordingly. After commissioning a tree report from arborist Yniguez, it issued a 2013 Supplement to the 2010 EA. Caltrans then took public comments, responded to them, and finally issued a NEPA Re-validation for the Project in January 2014. It found that the 2010 EA and FONSI remained valid.

In the Second Litigation, Bair challenged the re-validated Project on many of the same grounds as in the First Litigation. *See id.* The Second Litigation was dismissed after Caltrans withdrew the FONSI[7] in light of an adverse ruling in a parallel proceeding in the California Court of Appeal. *See Bair*, 385 F. Supp. 3d at 883–84; *Lotus v. Dep't of Transp.*, 167 Cal. Rptr. 3d 382, 393 (Ct. App. 2014). In response to the California court's order, Caltrans slightly reduced the scope of the Project, and Yniguez prepared another tree report.

## C.  2017 Project proposal and current litigation

Since the original issuance of the EA in 2010, Caltrans has modified the Project to reduce its impact, primarily by narrowing the proposed roadbed (roadway shoulders). The Project now requires the removal of 38 trees, none of which are old-growth redwoods, and construction will occur within the structural root zones of 78 old-growth redwood trees, 72 of which are within the Grove. That construction activity largely consists of (1) excavation to a maximum depth of two

---

[7] Notice of Rescission of Finding of No Significant Impact, 79 Fed. Reg. 70,612-01, 70,612 (Nov. 26, 2014).

feet; (2) covering some of the root zone with impervious surface (roadbed); and (3) placing fill over tree roots. As noted, Caltrans retained arborist Yniguez to evaluate the effects of the Project on the redwoods and to produce two reports summarizing his conclusions. In general, he determined that the Project "would not have any substantial detrimental effect on individual old-growth redwoods . . . or the overall health of the stand of redwoods in Richardson Grove." His reports were based on scientific literature regarding redwoods, his three decades of experience as an arborist, multiple site visits to the Grove (including a helicopter flight to evaluate tree crowns), and materials provided by Caltrans such as the EA, detailed schematic drawings of all trees with root zones within the Project area, and individual tree details for each. Yniguez assessed each tree individually to determine the likely effect on its health from the root zone disturbances created by the Project, both with and without mitigation measures, and assigned each tree a rating corresponding to the anticipated effects on its health, ranging from Level 0 to Level 6. He concluded that the Project would not jeopardize the lives of any old-growth redwood trees, and that the vast majority of such trees would sustain no decline in foliage density or health as a result of the Project. In the absence of mitigation measures, Yniguez decided that approximately eighteen old-growth redwood trees may manifest "a short-term visible reduction in foliage density that is still well within the adaptive capabilities of the tree" (Level 4 rating), while one such tree may undergo "a reduction in root health sufficient to cause lasting visible dieback of wood in the uppermost crown, although tree health and survival [would] not [be] threatened" (Level 5 rating). Including the Project's mitigation measures substantially reduced those effects: Yniguez determined that only three old-growth redwood trees would remain in Level 4 and none

in Level 5 if the proposed mitigation measures were implemented. Yniguez thus concluded that "[n]one of the proposed highway alterations is of sufficient magnitude to threaten the health or stability of any old-growth redwood" because "disturbances would be confined to a small percentage of the area occupied by roots and would be well within the adaptive capabilities of the tree[s]." Moreover, even without mitigation measures, Yniguez concluded that "the limited root disturbance would be inconsequential to the appearance, stability, and continued health of the old-growth redwoods in Richardson Grove."

Caltrans largely agreed with Yniguez's analysis, but also considered other evidence, such as scientific literature about the resilience, health, and development of redwoods and their root systems generally, the condition of the particular old-growth redwood trees in the Project area, and the specific activities and mitigation measures comprising the Project. Caltrans thus concluded that "[i]n no case would root disturbance have a significant detrimental effect on the health or stability of old-growth redwoods." In May 2017, Caltrans issued revisions to the EA and a new FONSI.

Bair filed this litigation in 2017,[8] again raising claims similar to those that had been made in the First Litigation and the Second Litigation, specifically: seven claims alleging various violations of NEPA, as well as claims for a violation of section 4(f) of the Department of Transportation Act,[9] a

---

[8] *Bair v. Cal. Dep't of Transp.*, No. 3:17-cv-06419-WHA (N.D. Cal. 2017).

[9] 23 U.S.C. § 138(a); *see also* 23 C.F.R. § 774.1.

violation of section 7 of the Wild and Scenic Rivers Act,[10] a violation of the Administrative Procedure Act (APA),[11] a declaration that Caltrans is responsible for Bair's attorney's fees and costs,[12] and injunctive relief.[13]   The district court granted Bair partial summary judgment as to some of the NEPA claims.  *Bair*, 385 F. Supp. 3d at 898.[14]   The district court identified certain issues that, in its view, Caltrans had not adequately considered: whether (1) redwoods would suffocate when more than half of their root zones were covered by pavement;[15] (2) construction in a redwood's structural root zone would cause root disease;[16] (3) traffic noise would increase because of the larger size of the STAA trucks or because of additional numbers of trucks;[17] and (4) redwoods would suffer more frequent and severe damage as a result of strikes by STAA trucks.[18]   Because of those deficiencies, the district court determined that Caltrans had not taken the requisite "hard look" at the environmental impacts of the Project, and that the EA was inadequate.  *Id.*

---

[10] 16 U.S.C. § 1278(a).

[11] 5 U.S.C. § 706(2)(A), (D).

[12] *See* 23 U.S.C. § 327(a)(2)(G); Cal. Civ. Proc. Code § 1021.5.

[13] Fed. R. Civ. P. 65(a).

[14] The district court did not address Bair's other claims.  *See id.*

[15] *Id.* at 886, 888.

[16] *Id.* at 891.

[17] *Id.* at 892–93, 895.

[18] *Id.* at 895.

at 890–91, 895, 898. In light of those supposed shortcomings in the EA, the district court concluded that substantial questions had been raised as to the effects of the Project, and it ordered Caltrans to prepare an EIS. The district court also enjoined Caltrans from proceeding with the Project until the EIS was finalized. Caltrans timely appealed. *See* Fed. R. App. P. 4(a)(1)(A).

## II.  JURISDICTION

The district court had jurisdiction pursuant to 28 U.S.C. § 1331. We have jurisdiction. 28 U.S.C. § 1291; *see HonoluluTraffic.com v. Fed. Transit Admin.*, 742 F.3d 1222, 1229 (9th Cir. 2014); *Alsea Valley All. v. Dep't of Com.*, 358 F.3d 1181, 1184 (9th Cir. 2004).

## III.  STANDARDS OF REVIEW

"We review de novo a district court's grant of summary judgment." *Am. Wild Horse Campaign v. Bernhardt*, 963 F.3d 1001, 1007 (9th Cir. 2020). "[A]gency decisions that allegedly violate NEPA" are reviewed "under the Administrative Procedure Act, and we set aside those decisions only if they are 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Id.*; *see also* 5 U.S.C. § 706(2)(A). "Whether a plaintiff has exhausted required administrative remedies is a question of law reviewed de novo." *Great Basin Mine Watch v. Hankins*, 456 F.3d 955, 961 (9th Cir. 2006).

## IV.  DISCUSSION

NEPA generally "requires a federal agency . . . to prepare 'a detailed statement on . . . the environmental impact' of

'major Federal actions significantly affecting the quality of the human environment,'"[19] a document known as an EIS.[20] However, the regulations alternatively "allow an agency to prepare a more limited document, an Environmental Assessment (EA), if the agency's proposed action . . . would [not] clearly require the production of an EIS." *Dep't of Transp. v. Pub. Citizen*, 541 U.S. 752, 757, 124 S. Ct. 2204, 2209–10, 159 L. Ed. 2d 60 (2004); *see also* 40 C.F.R. § 1501.4(b)–(c). An EA is "a 'concise public document' that '[b]riefly provide[s] sufficient evidence and analysis for determining whether to prepare an [EIS].'" *Dep't of Transp.*, 541 U.S. at 757, 124 S. Ct. at 2210; *see also Ctr. for Biological Diversity*, 538 F.3d at 1185; 40 C.F.R. § 1508.9(a)–(b).

If the "agency determines that an EIS is not required . . . , it . . . issue[s] a 'finding of no significant impact' (FONSI), which briefly presents the reasons why the proposed agency action will not have a significant impact on the human environment." *Dep't of Transp.*, 541 U.S. at 757–58, 124 S. Ct. at 2210; *see also* 40 C.F.R. §§ 1501.4(e), 1508.13. That decision "can be set aside only upon a showing that it was

---

[19] *Ctr. for Biological Diversity v. Nat'l Highway Traffic Safety Admin.*, 538 F.3d 1172, 1185 (9th Cir. 2008); *see also* 42 U.S.C. § 4332(C).

[20] *See* 40 C.F.R. § 1501.4(a), (c). The Council on Environmental Quality has adopted new regulations that became effective on September 14, 2020. Update to the Regulations Implementing the Procedural Provisions of the National Environmental Policy Act, 85 Fed. Reg. 43,304, 43,304 (July 16, 2020); *see also* 40 C.F.R. § 1506.13 (2020). Because Caltrans applied the previous regulations to the Project, so do we. Unless otherwise indicated, the regulations cited herein are the versions in effect when the district court rendered its decision.

'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Dep't of Transp.*, 541 U.S. at 763, 124 S. Ct. at 2213; *see also* 5 U.S.C. § 706(2)(A); *Ocean Advocs. v. U.S. Army Corps of Eng'rs*, 402 F.3d 846, 858 (9th Cir. 2005). Determining whether the agency's decision not to prepare an EIS was arbitrary and capricious "requires us to determine whether the agency has taken a hard look at the consequences of its actions, based [its decision] on a consideration of the relevant factors, and provided a convincing statement of reasons to explain why a project's impacts are insignificant." *Native Ecosystems Council v. U.S. Forest Serv.* (*Native Ecosystems I*), 428 F.3d 1233, 1239 (9th Cir. 2005) (internal quotation marks omitted). Although our review "is 'searching and careful,'" it is nevertheless narrowly circumscribed, "and we cannot substitute our own judgment for that of the [agency]." *Ocean Advocs.*, 402 F.3d at 858. Instead, "[w]e ask 'whether the [agency's] decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.'" *Id.* at 859; *see also In Def. of Animals v. U.S. Dep't of the Interior*, 751 F.3d 1054, 1072 (9th Cir. 2014). But we must keep in mind that we are not "a panel of scientists that instructs the [agency] how to validate its hypotheses . . . , chooses among scientific studies . . . , [or] orders the agency to explain every possible scientific uncertainty." *Lands Council v. McNair*, 537 F.3d 981, 988 (9th Cir. 2008) (en banc), *overruled in part on other grounds by Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 21–22, 129 S. Ct. 365, 375, 172 L. Ed. 2d 249 (2008).

Caltrans based its 2017 FONSI upon the analysis contained in the revised EA, which incorporated the analysis of the 2010 EA and the 2013 Revised Supplemental EA. Because Caltrans' 2010 EA, as supplemented and revised,

constituted the "hard look" at the Project's effects required by NEPA, Caltrans' issuance of the 2017 FONSI was reasonable. The district court erred in granting partial summary judgment to Bair. As we explain in the ensuing paragraphs, none of the purported inadequacies it identified rendered the revised EA arbitrary or capricious.

*First*, as to redwood tree suffocation, Caltrans sufficiently considered the effect of paving over portions of tree root zones. The Project will use a special material to allow "'greater porosity'" and to "'promote air circulation'" under the asphalt,[21] and Caltrans considered the aggregate amount of new roadbed material that would be placed over the structural root zones. Yniguez specifically relied in part upon Caltrans' selection of permeable material, the minor and limited areas of new asphalt, and Caltrans' decision to narrow the proposed roadway shoulders where possible in reaching his conclusion that the Project would not create extreme stress in the redwoods or overwhelm their natural resilience.[22] And, as more particularly described in Part I.C of this Opinion, Yniguez and Caltrans thoroughly assessed the amount of paving that would be placed over the root zone of each tree. Caltrans considered the possibility that paving could harm the trees, but simply (and reasonably) concluded that there was sufficient evidence to the contrary. *See In Def.*

---

[21] *Bair*, 385 F. Supp. 3d at 888.

[22] Caltrans reasonably relied upon Yniguez's reports, and Bair does not argue otherwise. *See Native Ecosystems Council v. Weldon* (*Native Ecosystems II*), 697 F.3d 1043, 1051–52 (9th Cir. 2012). Caltrans' reliance on evidence specifically pertaining to redwoods (including Yniguez's reports) was eminently reasonable, especially because the record reflects that redwood trees and their root systems are particularly (uniquely) resilient.

*of Animals*, 751 F.3d at 1072; *Lands Council*, 537 F.3d at 1003.  That was not arbitrary or capricious.  *See In Def. of Animals*, 751 F.3d at 1072–73.**[23]**  The district court erred in concluding that the EA failed to adequately consider the effects of paving over portions of the root zones of certain trees.

*Second*, as to construction within root zones, Caltrans appropriately considered the extent and effect of the construction activity that would occur in the structural root zones of redwood trees, including construction guidelines in a State Parks handbook.  The record plainly belies Bair's contention that Caltrans failed to consider the effects of construction.  On the contrary, as described in Part I of this Opinion, the record is replete with Caltrans' comprehensive analyses of the extent and effects of construction activity in the root zones of individual trees.  *See Cold Mountain v. Garber*, 375 F.3d 884, 893–94 (9th Cir. 2004).**[24]**  As to the

---

**[23]** Moreover, there is no evidence supporting the district court's assumption that 50% paving over root zones is some sort of "threshold" demarcating a "'danger zone'" or "red zone" for redwood trees.  *Bair*, 385 F. Supp. 3d at 888–89.  Rather, that is an unwarranted inference drawn from a misreading of evidence in the record.  Indeed, no comments or evidence in the administrative record raised the 50% threshold issue.  That suggests that the issue was not even administratively exhausted.  *See Barnes v. U.S. Dep't of Transp.*, 655 F.3d 1124, 1132, 1135–36 (9th Cir. 2011).

**[24]** The district court erred in criticizing Caltrans for failing to consider whether root disease would arise from root injuries caused by construction.  *See Bair*, 385 F. Supp. 3d at 891.  Caltrans reasonably relied upon its expert's opinion that redwoods have "no important . . . disease enemies"—evidence tailored to redwoods specifically, rather than trees in general.  *See In Def. of Animals*, 751 F.3d at 1072; *City of Carmel-By-The-Sea v. U.S. Dep't of Transp.*, 123 F.3d 1142, 1151 (9th Cir. 1997).

sentence in State Parks' handbook that recommended that no construction should take place in the structural root zone "of a protected tree," it is not clear that it applied to the affected redwoods or influenced State Parks' opinion of the Project, or that Caltrans was obligated to defer to or adopt that opinion. *See WildEarth Guardians v. Provencio*, 923 F.3d 655, 672 (9th Cir. 2019); *see also Native Ecosystems I*, 428 F.3d at 1242. NEPA anticipates that the administrative record may contain contradictory and conflicting opinions, expert and otherwise,[25] and does not require an agency to follow all recommendations made by commentators, other agencies, or experts.[26] Thus, to the extent that the recommendation in State Parks' handbook is relevant here, Caltrans could (and did) reasonably refuse to follow it, especially when Caltrans relied upon evidence specifically pertaining to the effects of construction on redwoods in general and the redwoods in the Project area, in particular. In fine, the district court erred when it decided that Caltrans failed to sufficiently consider the State Parks handbook and the impact of construction in the structural root zones of old-growth redwoods.

*Third*, as to traffic volume and noise, the district court erred when it decided that Caltrans failed to adequately consider how the visitor experience to the Grove would be affected by the presence of STAA trucks, particularly with regard to whether they would be more numerous or generate more noise. *Bair*, 385 F. Supp. 3d at 891–92, 895. Caltrans' EA concluded that truck traffic would not increase as a result of the Project, and it properly relied upon record evidence to

---

[25] *City of Carmel-By-The-Sea*, 123 F.3d at 1151; *see also In Def. of Animals*, 751 F.3d at 1072.

[26] *See WildEarth Guardians*, 923 F.3d at 672.

do so, including: a survey of regional business owners, traffic studies in nearby areas suggesting little latent demand for the route, the fact that highway capacity would be unchanged, and Caltrans' opinion that STAA trucks currently using the straighter alignment and faster travel time of Interstate 5 to reach major coastal cities were unlikely to detour through the Grove. *See In Def. of Animals*, 751 F.3d at 1072. Caltrans reasonably concluded from that evidence that traffic would not increase as a result of the Project. Thus, Caltrans' conclusion that traffic would not increase is entitled to deference. *See WildEarth Guardians*, 923 F.3d at 672; *Native Ecosystems II*, 697 F.3d at 1052–53; *cf. Ocean Advocs.*, 402 F.3d at 865–66 (agency failed to consider possible traffic increase). Moreover, in light of its conclusion that truck traffic would not increase, Caltrans also reasonably concluded that traffic noise would not appreciably increase. Although the district court stated that it believed STAA trucks would be noisier than California Legal trucks because their tractor units "are bigger and heavier,"[27] it cited no evidence for its assumptions about the size and weight of STAA tractor units, or its belief about their noise in comparison to California Legal trucks. Nor have we been pointed to any evidence of that in the record. A district court has no more license to act as "a panel of scientists" than we have. *Lands Council*, 537 F.3d at 988. Caltrans adequately considered the Project's effects on both traffic and traffic noise in the Grove, and reasonably concluded that the impacts would not be significant.

*Fourth*, as to collisions with trees, the district court erred by determining that Caltrans should have analyzed whether the Project could cause trees to: suffer more frequent

[27] *Bair*, 385 F. Supp. 3d at 894–95.

collisions with trucks because STAA trucks are longer and more difficult to maneuver; and sustain more damage from collisions because STAA trucks are heavier and their engine compartments more protruding than California Legal trucks. *Bair*, 385 F. Supp. 3d at 895. Caltrans' analysis was not arbitrary and capricious. *See Lands Council*, 537 F.3d at 993. As to collision frequency, the undisputed purpose of the Project is to widen the road in order to provide room for off-tracking STAA trucks, and Caltrans reasonably concluded that doing so would decrease the incidence of vehicles colliding with trees. Bair's assumption that the collision risk will increase because the pavement will be closer to some trees ignores that the pavement is moving farther from other trees.[28] Caltrans' conclusions regarding the frequency of collisions were reasonable and entitled to deference, especially because they pertain to an "area[] of agency expertise." *Nat'l Parks & Conservation Ass'n v. U.S. Dep't of Transp.*, 222 F.3d 677, 682 (9th Cir. 2000); *see also Lands Council*, 537 F.3d at 993.

As to damage severity, we have not located any comments or documents in the administrative record which indicate that STAA trucks would cause more damage when they strike trees. Thus, it appears that issue was not administratively exhausted. *See Barnes*, 655 F.3d at 1132, 1135–36. And even if the issue had been exhausted, the district court's speculation that trees would suffer more severe damage from collisions because of the weight or shape of STAA trucks is not supported by any evidence in the

---

[28] It also ignores record evidence suggesting that the number of trucks traveling through the Grove may actually decrease because some of the California Legal trucks that would otherwise drive through the Grove may be replaced by fewer STAA trucks.

record. It was reasonable for Caltrans' EA not to anticipate that unfounded speculation. *See Lands Council*, 537 F.3d at 1002. We reject Bair's argument that because Caltrans was responsible for drafting the EA, it was also required to amass evidence demonstrating the comparative damage caused to trees by collisions with STAA trucks and California Legal trucks. *See* 40 C.F.R. § 1508.9(a). While it is arbitrary and capricious for an agency to "'entirely fail[] to consider an important aspect of the problem,'" that did not occur here. *Lands Council*, 537 F.3d at 993. As described above, Caltrans considered the effects of the Project with regard to traffic volume, noise, ease of navigation, and tree collisions. An agency is not required "to address in detail . . . every single comment . . . to prove that [it] 'considered' the relevant factors,"[29] much less to anticipate conclusory supposition about speculative and tangential effects that are not supported by evidence in the record.[30]

For those reasons, we are satisfied that Caltrans took a hard look at the consequences of the Project, and adequately considered the relevant factors. *See Native Ecosystems I*, 428 F.3d at 1239. That Bair or the district court may disagree with Caltrans' conclusions "does not constitute a NEPA violation." *Native Ecosystems II*, 697 F.3d at 1053; *see also WildEarth Guardians*, 923 F.3d at 672. Thus, the district court erred in finding Caltrans' EA arbitrary and capricious and in setting aside the 2017 FONSI.

---

[29] *In Def. of Animals*, 751 F.3d at 1072.

[30] *See WildEarth Guardians*, 923 F.3d at 672; *Native Ecosystems II*, 697 F.3d at 1053, 1055; *see also Am. Wild Horse Campaign*, 963 F.3d at 1008–10.

In light of our conclusion, we reverse the district court's judgment requiring Caltrans to produce an EIS and enjoining it from continuing the Project until it has done so. An agency must prepare an EIS "[i]f there is a substantial question whether an action 'may have a significant effect' on the environment." *Ctr. for Biological Diversity*, 538 F.3d at 1185; *see also* 42 U.S.C. § 4332(C); 40 C.F.R. §§ 1502.1, 1508.18, 1508.27. The district court's rationale for requiring an EIS was predicated on its erroneous conclusions about the Project's effects on redwood tree health and possible increases in truck traffic and noise. Because we have determined that the EA's analysis was adequate in those respects, the district court necessarily erred in setting aside the 2017 FONSI and ordering Caltrans to prepare an EIS if it desired to proceed. *See Dep't of Transp.*, 541 U.S. at 762–64, 124 S. Ct. at 2212–13.[31]

## V. CONCLUSION

The parties have engaged in contentious litigation over the (relatively limited) Project for more than ten years. However, Caltrans' environmental analyses regarding the redwoods and traffic satisfied NEPA's requirements. Therefore, we reverse the district court's judgment, and we vacate the injunction.

While we have now resolved those aspects of the parties' dispute, Bair's other claims regarding defects in Caltrans'

---

[31] Caltrans invites us to exercise our discretion to resolve Bair's other claims, which the district court did not reach when it entered final judgment against Caltrans. *See Bair*, 385 F. Supp. 3d at 898. We decline the invitation. *See Davis v. Nordstrom, Inc.*, 755 F.3d 1089, 1094–95 (9th Cir. 2014).

consideration of other issues remain unresolved because the district court's order that Caltrans must prepare an EIS made it unnecessary to do so. We expect that the district court will now expeditiously consider and dispose of those remaining claims on remand.

**REVERSED and REMANDED for further proceedings not inconsistent with this Opinion.**

WARDLAW, Circuit Judge, concurring

"Although the environmental assessment did not always make [Caltrans's] reasoning explicit" and is "a decision of less than ideal clarity," "the agency's path may reasonably be discerned." *Am. Wild Horse Campaign v. Bernhardt*, 963 F.3d 1001, 1009 (9th Cir. 2020). Therefore, in light of the administrative record in this case, I concur in the majority opinion. Caltrans did not violate NEPA because its reliance on the EA was not arbitrary and capricious. I write separately to emphasize three points.

First, reviewing the "nightmarish 'administrative record' in this case was a painful exercise. *Bair v. Cal. State Dep't of Transp.*, No. C 17-06419 WHA, 2019 WL 2644074, at *5 (N.D. Cal. June 27, 2019). When resolving the remaining claims on remand, the district court's suggestion that Caltrans provide a "fresh administrative record . . . with no incorporations by reference" seems sensible. *Id.* at *5.

Second, and as Caltrans's counsel acknowledged at oral argument, if "significant new information is discovered" during the proposed construction or if "substantial project

changes are made," Recording of October 13, 2020 Oral Argument at 17:10–17:42,[1] Caltrans may well need to reevaluate its analysis and potentially prepare an additional revised EA or even an EIS. *See* 23 C.F.R. §§ 771.129, 771.130; *see also Idaho Sporting Congress Inc. v. Alexander*, 222 F.3d 562, 566 n.2 (9th Cir. 2000) ("NEPA imposes on federal agencies a continuing duty to supplement existing EAs and EISs in response to significant new circumstances or information relevant to environmental concerns and bearing on the proposed action or its impacts." (internal quotation marks and citation omitted)); *Price Road Neighborhood Ass'n, Inc. v. U.S. Dep't of Transp.*, 113 F.3d 1505, 1510 (9th Cir. 1997) (examining the FHWA NEPA framework and the continuing duty to supplement).

Third and relatedly, the road or highway construction that Caltrans has proposed here seems likely to provide new data on the effects of construction on old-growth redwoods. Given that much of the scientific evidence in the record is non-quantitative and dated, I would expect that such data would prove important to future decisions surrounding these historic trees, and—if that data becomes available during the project—to any decision concerning the preparation of a supplemental EA or EIS.

So therefore, I respectfully concur, with slight reservations in these tumultuous times.

---

[1] https://tinyurl.com/y39s2g6o (last visited Nov. 24, 2020).