Filed 3/26/26

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| BESS BAIR et al.,<br><br>        Plaintiffs and Appellants,<br>v.<br><br>CALIFORNIA DEPARTMENT OF<br>TRANSPORTATION et al.,<br><br>        Defendants and Respondents. | A172681<br><br>(Humboldt County<br>Super. Ct. No. CV2300375) |

This is an appeal from a judgment entered on the third petition for writ of mandate petitioners have filed in Humboldt County Superior Court[1] over the last fifteen years, challenging the California Department of Transportation (Caltrans)'s compliance with the California Environmental Quality Act (CEQA) in connection with a highway construction project. The project consists of improvements to a stretch of U.S. Highway 101 that passes through Richardson Grove State Park in Humboldt County (the park), home to a stand of old growth redwood trees.

---

[1] Petitioners also challenged the project in federal court under the National Environmental Policy Act and other federal statutes, resulting in orders requiring Caltrans to undertake additional studies and revise its analysis. (See *Bair v. California Dept. of Transportation* (9th Cir. 2020) 982 F.3d 569, 574-575; *Bair v. California Dept. of Transportation* (N.D.Cal. 2021) 557 F.Supp.3d 957, 960-961.)

1

The first petition resulted in an appellate decision invalidating Caltrans' environmental impact report (EIR) under CEQA for failing to properly evaluate the project's impacts on the redwood trees (*Lotus v. Department of Transportation* (2014) 223 Cal.App.4th 645 (*Lotus*)) and in a corresponding judgment and writ of mandate issued on remand. The second (*Bair et al. v. Department of Transportation et al.,* (Super. Ct. Humboldt County, No. CV170543)) resulted in a trial court judgment and writ of mandate invalidating the addendum to the EIR Caltrans prepared to correct the earlier deficiency (the Addendum) because Caltrans had again violated CEQA, this time by failing to circulate the Addendum for public review and comment. After Caltrans circulated the Addendum for public comments and recertified the EIR and Addendum, both writs were discharged, and Petitioners did not appeal from those orders. The judgment entered in this case denied petitioners' third petition for writ of mandate challenging the substantive adequacy of the Addendum under CEQA. The trial court ruled that petitioners' challenge to the adequacy of the Addendum under CEQA was barred by the court's discharge of the two previous writs, and that even if that challenge could be raised it lacked merit. Petitioners contend the superior court erred in both respects.

We affirm the judgment. In discharging the writ that issued in the first proceeding (the *Lotus* writ), the superior court necessarily determined that the revised environmental analysis in the Addendum complies with CEQA, and its decision became final without an appeal. Res judicata bars petitioners from relitigating that question anew in this case.

## BACKGROUND

As described in greater detail in the prior appellate opinion, the park is home to massive old growth redwood trees that are 300 feet tall and

2

thousands of years old, many of which are immediately adjacent to the approximately one-mile stretch of U.S. Route 101 that passes through it. (*Lotus*, *supra*, 223 Cal.App.4th at p. 648.)  That portion of the highway is a narrow, tightly curving two-lane road that does not meet current design standards.  (*Ibid*.)  The highway project is designed to reconfigure that one-mile segment to improve vehicular safety and accommodate a class of industry standard-sized trucks that are currently prohibited from using the highway, due to their size.  (*Ibid*.)

Caltrans initially certified the EIR and approved the highway project on May 18, 2010.  (*Lotus*, *supra*, 223 Cal.App.4th at p. 648.)  It concluded the project would have no significant environmental impacts.  (*Id*. at pp. 648-649, 651.)  The 15-year litigation odyssey that has ensued is about as labyrinthine as the root systems of the redwood trees themselves.[2]

On June 10, 2010, several local residents and environmental groups[3] filed a petition for writ of mandate and injunctive relief challenging the EIR under CEQA.  (*Lotus et al. v. California Department of Transportation* (Super. Ct. Humboldt County, No. CV110002).)  The petition was denied in full, but on appeal our colleagues in Division Three held the EIR violated CEQA insofar as it failed to properly analyze the project's impacts on the root

---

[2] According to the National Park Service website, the roots of redwood trees "grow only 10 to 13 feet vertically, and then spread horizontally for 60 to 80 feet, intertwining with the roots of other redwoods in a grove," providing them with stability (<nps.gov/articles/000/coast-redwood.htm> [as of Mar. 26, 2026]) and the ability to share nutrients with one another. (<https://www.nps.gov/muwo/learn/nature/mycorrhizal-relationships.htm> [as of Mar. 26, 2026]).

[3] The groups were Environmental Protection Information Center (EPIC), Center for Biological Diversity (CBD) and Californians for Alternatives to Toxics (CATS).

systems of old growth redwood trees adjacent to the highway.  (*Lotus*, *supra*, 223 Cal.App.4th at pp. 647-648, 653-658.)

Division Three identified two problems with the EIR's treatment of this issue.  First, it failed to articulate any standard for determining whether an impact on redwood trees was significant.  (See *Lotus*, *supra*, 223 Cal.App.4th at pp. 654-655; see also Pub. Resources Code, § 21100, subd. (b).)  Although the EIR contained information about the project's overall impacts on redwood trees (such as quantifying how many would be removed, and how many would experience construction activities and/or have fill placed within their structural root zones, as well as general information concerning where new roadway materials would be placed), and other data from which it was possible to extrapolate and/or calculate further information, it failed to "include any information that enables the reader to evaluate the significance of these impacts."  (See *Lotus,* at pp. 654, 649-650.)  The EIR, in short, "fail[ed] to identify any standard of significance, much less to apply one to an analysis of predictable impacts from the project."  (*Id*. at p. 655.)

Second, the EIR improperly combined its analysis of the project's impacts on redwood trees with its discussion of proposed mitigation measures.  (See *Lotus*, *supra*, 223 Cal.App.4th at pp. 655-657.)  "Absent a determination regarding the significance of the impacts to the root systems of the old growth redwood trees," our colleagues explained, "it is impossible to determine whether mitigation measures are required or to evaluate whether other more effective measures than those proposed should be considered.  Should Caltrans determine that a specific tree or group of trees will be significantly impacted by proposed roadwork, that finding would trigger the need to consider a range of specifically targeted mitigation measures, including analysis of whether the project itself could be modified to lessen the

4

impact." (*Id.* at p. 656.)  "Simply stating that there will be no significant impacts because the project incorporates 'special construction techniques' is not adequate or permissible."  (*Id.* at p. 657.)

In these ways, the EIR "subvert[ed] the purpose of CEQA by omitting material necessary to informed decisionmaking and informed public participation."  (*Lotus, supra,* 223 Cal.App.4th at p. 658.)  Indeed, the California Department of Parks and Recreation (Parks Department) had brought these problems to Caltrans' attention in its comments to the draft EIR and because of those problems had been unable to assess whether the project would have a significant impact on the redwood trees.  (See *id.* at p. 657.)

In invalidating the EIR, Division Three ruled that Caltrans was "not required to start the EIR process anew" but "need only correct the deficiencies" discussed in the opinion "before considering recertification of the EIR."  (*Lotus, supra,* 223 Cal.App.4th at p. 658.)  It reversed the denial of the petition for a writ of mandate and remanded the case "for issuance of a writ directing Caltrans to set aside its certification of the final EIR pending modification of those portions of the EIR discussing impacts on old growth redwood trees and proposed mitigation measures in compliance with CEQA."  (*Ibid.*)

On remand in October 2014, the *Lotus* trial court entered a judgment granting the petition for a writ of mandate and issued a writ.  The writ:  (1) directed Caltrans to set aside its approval of the project and certification of the EIR; (2) enjoined Caltrans "from any and all activities related to the Project that could result in change or alteration of the physical environment until it has taken any and all actions necessary to comply with CEQA in accordance with the Opinion of the Court of Appeal issued on January 30,

5

2014" and (3) provided for the trial court's retention of jurisdiction "until this Court has determined that Caltrans has complied with the writ."

As directed, Caltrans decertified the EIR, rescinded its project approval and thereafter prepared an Addendum addressing anew the project's impacts on old growth redwood trees. The Addendum concluded the project would not result in any significant impacts to the redwood trees. It also concluded that the project's "minimal" impacts would be further reduced by the adoption of "minimization" measures including the use of special excavation and construction methods intended to minimize disturbance of tree roots.

The Addendum was based in part on the report and findings of a certified arborist who, after conducting site visits, concluded that the project "would not have any substantial detrimental effect on individual old growth redwoods . . . or the overall health of the stand of redwoods" (hereafter, Tree Report). The arborist examined all trees whose "root health zones"[4] were located within the area where soil would be disturbed by project activity (i.e., 109 trees) and, based on certain criteria, rated each tree on a scale of zero to six; zero indicated that disturbance of the tree's root zone would have "no effect" on a tree's health while the upper limit of six indicated that the disturbance "may be severe enough to threaten [the tree's] survival." Even using conventional highway construction techniques, no trees fell into that uppermost category, and the arborist concluded that "[n]one of the proposed highway alterations . . . is of sufficient magnitude to threaten the health or stability of any old-growth redwood." Taking into account minimization measures, the project's impacts were even less—only three of the 109 trees

---

[4] A tree's "root health zone" is a circular area equal to five times the trunk's diameter measured 4.5 feet above ground level.

6

would have even a short-term visible reduction in foliage density which would be within the tree's adaptive capabilities (i.e., a rating of four). By contrast, without such techniques, 18 trees would experience those impacts and one would experience lasting visible dieback of wood in the uppermost crown (i.e., a rating of five).[5]

In May 2017, Caltrans recertified the EIR with the Addendum and re-approved the project.

Shortly thereafter, on June 22, 2017, many of the *Lotus* petitioners, joined by two new parties, filed a second petition for writ of mandate against Caltrans, entitled *Bair et al. v. Department of Transportation et al.* (Super. Ct. Humboldt County, No. CV170543) (*Bair I*), challenging the recertified EIR and Addendum under CEQA.[6] They alleged Caltrans failed to correct the substantive errors identified by the appellate court in *Lotus*. Specifically, they asserted that the Addendum failed to properly disclose, analyze or mitigate the project's significant adverse effects on the environment, including the old-growth redwood trees and their root systems; failed to consider, evaluate and incorporate all feasible mitigation measures; and failed to identify and discuss cumulative impacts resulting from changes to the project. Petitioners also alleged various procedural deficiencies, including, among other things, that Caltrans violated CEQA by failing to circulate the Addendum for public comment.

---

[5] Recommended minimization measures included the use of hand tools and pneumatic soil excavators, clean cuts to roots, supplemental irrigation, keeping the undisturbed soil beneath tree canopies free of heavy equipment and materials and monitoring of the construction by a designated on-site person to ensure that minimization measures were followed.

[6] The new petitioners were Bess Bair and a nonprofit public interest group called Friends of Del Norte.

7

Shortly after petitioners filed *Bair I*, Caltrans filed a return to the *Lotus* writ asking the court to discharge it. Caltrans asserted it had remedied the defect identified by the Court of Appeal in *Lotus* because the Addendum analyzed the project's impacts on old growth redwood trees separately from consideration of the proposed mitigation measures. It also asserted that the substantive validity of the Addendum was *not* before the court in the *Lotus* proceeding and would be adjudicated in *Bair I*.

The *Lotus* petitioners opposed discharge of the writ. They argued compliance with the writ was "synonymous" with compliance with CEQA, and so the writ should not be discharged because Caltrans failed to comply with CEQA in developing and approving the Addendum (and furthermore, that the two cases should be consolidated due to the overlapping issues).

Subsequently, on May 15, 2018, the trial court (the Hon. Kelly L. Neel, presiding) denied discharge of the *Lotus* writ without prejudice, pending a final determination of the CEQA issues in *Bair I*. It stated that it "disagree[d] that the 'defensibility of the substantive contents of the Addendum' is necessarily outside the scope of the instant motion" by Caltrans to discharge the *Lotus* writ, because "[w]ithout undertaking a substantive analysis of the Addendum now at issue in [*Bair I*] the Court cannot determine whether it complies with CEQA and thus with the Peremptory Writ that the Court of Appeal directed the Court to issue."

About a year later, the trial court (Judge Neel, presiding) issued a ruling on the petition for writ of mandate in *Bair I*. It recited that the parties in *Lotus* and *Bair I*, "agreed that there was such significant overlap in the issues . . . that matters will be determined in this case." The court framed the issue before it as "extend[ing] past whether Caltrans fully complied with the previously issued Writ" to include "whether they complied in a manner

8

consistent with the requirements of CEQA in their efforts to comply with the writ." In addressing that subject, the court rejected one of petitioners' arguments, concluding that Caltrans had not made changes that altered the scope of the project. But it agreed that Caltrans violated CEQA by not subjecting the Addendum and Tree Report to public review and comment and ordered that this be done.

On July 9, 2019, the court entered a judgment granting the *Bair I* writ petition for the reasons set forth in its ruling, directed issuance of a peremptory writ of mandate ordering Caltrans to set aside its approval of the project and to decertify the EIR and Addendum and enjoining Caltrans from "any and all Project activities that could physically alter the Project area until a determination has been made that Caltrans has complied with this Judgment and the Peremptory Writ of Mandate." The judgment reserved jurisdiction "by way of a return to the Peremptory Writ of Mandate until a determination has been made that Caltrans complied with this Judgment and the Peremptory Writ of Mandate." The clerk then issued a writ of mandate directing Caltrans to decertify the EIR and Addendum, to circulate both for public comment and to consult with the Parks Department.

Neither the judgment in *Bair I* nor the writ directed Caltrans to revise the substance of the Addendum's or Tree Report's environmental analysis. Yet neither the court's ruling in *Bair I* nor the judgment expressly addressed whether the Addendum complied with the substantive concerns that led to issuance of the *Lotus* writ, an ambiguity that would later generate disagreement over the preclusive effect of the *Bair I* judgment (an issue we do not address here).[7]

---

[7] The *Bair I* judgment said nothing about petitioners' substantive challenges to the Addendum. The trial court's ruling contained some

9

In August 2018, Caltrans set aside its project approval and decertified the EIR and Addendum.  Subsequently, it circulated the EIR and Addendum for public comment and then responded to public comments in the Addendum.  It also consulted with the Parks Department, which this time had no comments and communicated its view that the project includes all possible planning to minimize harm to State Parks lands.  On January 30, 2023, it reapproved the project and recertified the EIR and Addendum which included its responses to comments on the Addendum.  Other than its

comments addressing the subject indirectly.  It observed that the *Lotus* decision "squarely identifies a separate analysis of impacts to root health zones as 'material necessary to informed decision making and informed public participation' " and that Caltrans had now "provided the missing analysis," but it added that Caltrans "has done so in a way that prevented comment and feedback from the public and, in particular, from the Department of Parks of [*sic*] Recreation."  It also stated that the Park Department's concerns about the project's potential impact on redwood trees noted in the *Lotus* decision "may or may not persist in the face of the Addendum and the arborist report that it relies on.  Without formal consultation pursuant to the relevant provisions of CEQA, any concerns the Department has will remain outside the administrative record and thus evade judicial review of any legal issues that those concerns may raise.  The same is true for the concerns of other stakeholders and members of the public at large. [¶] Moreover, the rating system devised by the arborist may or may not rest on sound scientific footing.  Without review and critique by others with expertise in the relevant fields, this footing remains untested.  Peer review is essential to sound science.  The choice of the state to approve an Addendum without soliciting public comment foreclosed any possibility that this [methodology] would be scrutinized and evaluated by other experts."  The court further stated, "The case law is clear that an agency's significance determinations in an EIR must be made after circulation for comment by the public and after consultation with other agencies," and on that basis invalidated Caltrans' certification of the EIR and Addendum "so that [Caltrans] can fulfill its obligations to the public under CEQA."

responses to comments, the EIR and Addendum were unchanged. Once again, Caltrans concluded the project would have no significant impact on the environment.

In February 2023, Caltrans filed a single return to both the *Lotus* and *Bair I* writs requesting the discharge of both. The return stated that Caltrans had complied with the *Lotus* writ by "prepar[ing] an Addendum to the [EIR], addressing the issues and analysis identified by the Court of Appeal" and "[recertifying] the [EIR] along with the Addendum." It stated Caltrans had complied with the *Bair I* writ by "circulat[ing] for public . . . comment the Addendum . . . along with the accompanying [EIR]" and "consult[ing] with California Department of Parks and Recreation ('State Parks')," "provid[ing] State Parks with the Addendum during the circulation period" and hearing from State Parks that "it had no comments on the project analysis and reiterat[ing] its . . . concurrence as to the Project." Finally, it had responded to the public comments on the Addendum before recertifying the EIR.

The following month, petitioners filed consolidated objections in *Lotus* and *Bair I* to Caltrans' joint return and request for discharge and at the same time commenced this lawsuit by filing a third petition for writ of mandate and injunctive relief.[8] Their objections to discharge of the writs incorporated the petition by reference. The substance of both overlaps considerably.

As relevant here, petitioners objected to discharge of the two writs on the ground that Caltrans' CEQA analysis concerning the redwood trees was still flawed. Their objections stated: "Caltrans has failed to demonstrate

---

[8] The petition names both Caltrans and its director, Tony Tavares. We refer to them collectively as "Caltrans."

11

that the 2017 Addendum adequately discloses, analyzes and mitigates the Project's impacts to old-growth redwoods. Writ 1 can only be discharged upon a showing that Caltrans has remedied the flawed [EIR] in a manner that complies with CEQA. The *Bair II* petition [i.e., this case] asserts, among other causes of action, that the 2017 Addendum fails as an informational and analytical document, and therefore Caltrans has yet to produce an adequate analysis of the Project's impacts on old-growth redwood trees and their root zones. This Court, or any other court, has not ruled on the substantive adequacy of the 2017 Addendum, and Caltrans' Return and Request does not provide a record against which this Court can properly adjudicate whether the 2017 Addendum contains analysis and conclusions that are supported by substantial evidence. For one, the Return and Request does not include the 2017 Addendum, nor the Tree Report upon which it is based. Furthermore, the Return and Request does not include the public comments submitted on the 2017 Addendum, since Caltrans' Response to Comment only included cherry-picked, paraphrased excerpts of the public's extensive comments and critiques of the 2017 Addendum." The objection to discharge of the *Lotus* and *Bair I* writs also alerted the court in both actions that this lawsuit, simultaneously filed, "alleg[es] that the 2017 Addendum's disclosure, analysis and mitigation of the Project's impacts to old-growth redwood trees and their root zones is inadequate, and therefore Caltrans has failed to remedy the [EIR's] shortcomings as identified in *Lotus*."

Likewise, the petition filed in this case again challenges the Addendum's validity.[9] As relevant here, it alleges the Addendum fails to

_____

[9] The verified petition challenges the Addendum on multiple grounds, both procedural and substantive. We summarize only those allegations and claims that pertain to the issues raised in this appeal.

12

adequately disclose, analyze and mitigate the project's impacts on old-growth redwood trees. The Addendum's analysis violates CEQA, it alleges, because it "relies on undefined and unsupported thresholds of significance" and its significance determination is unsupported by substantial evidence because it relies on "on an arbitrary, and heretofore unused and [un]tested, tree rating system that produced inconsistent and subjective findings." The petition alleges this lawsuit is necessary because "Caltrans continues to fail to meet its informational and analytical mandate under CEQA" and that petitioners were simultaneously objecting to discharge of the *Lotus* and *Bair I* writs on the same ground—namely, that "Caltrans failed to comply with both writs because the 2017 Addendum is legally inadequate as an informational and analytical document under CEQA."

Shortly after commencing this case and simultaneously opposing discharge of the writs, petitioners, on April 21, 2023, filed a motion to consolidate all three cases, asserting they "hinge[] on a single question: whether . . . [the] Addendum . . . complies with the California Environmental Quality Act." Their motion repeatedly stressed that the single question was the Addendum's substantive adequacy under CEQA, with the only difference between the cases being the state of their records. The motion was later denied by a different trial court judge (the Hon. John T. Feeney) on grounds that are not apparent from the record, and petitioners did not seek review of that ruling.

Caltrans, meanwhile, filed a motion to discharge both writs and petitioners opposed it. All parties agreed that the *Lotus* writ should be discharged if the Addendum cured the defects identified by the appellate

13

court.[10] The central dispute concerning discharge of the *Lotus* writ at this juncture was whether the Addendum was in fact CEQA compliant. Caltrans argued the trial court had "ruled on Petitioners' comprehensive CEQA challenge to the Addendum in *Bair* [*I*]," leaving "nothing remaining to be done" as to the *Lotus* writ. It argued that petitioners' objections to the Addendum's sufficiency were now barred by res judicata, because all of the same substantive issues had been put at issue in *Bair I* and the trial court *did* adjudicate them, as reflected by "its finding of only a deficiency as to public circulation and further State Parks consultation."[11]

By contrast, petitioners argued Caltrans had not demonstrated compliance with the *Lotus* writ, for three reasons: first, the trial court in *Bair I* had not adjudicated the Addendum's substantive adequacy, because *Bair I* invalidated the Addendum on procedural grounds only, and so its substantive compliance with CEQA had not yet been ripe in *Bair I*[12]; second,

---

[10] For example, petitioners argued the *Lotus* writ required Caltrans to prepare an adequate, CEQA-compliant analysis of the project's impacts on old-growth redwoods, and Caltrans argued that it "complied with [the *Lotus*] writ by preparing a new redwood tree roots analysis, set forth in the . . . Addendum to the . . . [EIR]."

[11] Caltrans also argued such issues were beyond the scope of what the *Bair I* writ had ordered it to do, because "neither the *Bair* judgment nor [w]rit . . . identify any deficiency in the tree root analysis or direct the State to revisit or redo any part of the analysis."

[12] At the same time petitioners argued that *Bair I* had not adjudicated the merits of the Addendum's adequacy, they opposed discharge of the *Bair I* writ on the ground that "as provided above [concerning the *Lotus* writ], the 2017 Addendum is a flawed CEQA document . . . ." In addition, "[i]ndependent of the substantive adequacy of the 2017 Addendum's analysis," they opposed discharge of the *Bair I* writ on the ground that Caltrans had failed to adequately respond to public comments received on the Addendum.

14

Caltrans had not demonstrated the Addendum complied with CEQA because it had not provided a complete administrative record of the most recent project approvals in its return to the writ or motion papers; and third, "the limited information available demonstrates that, once again, Caltrans has failed to adequately assess the Project's impacts to old-growth redwoods." As to the last of these, petitioners argued, among other things, that the Addendum and Tree Report failed to identify a threshold of significance to quantify the impacts and that the arborist's conclusions were not substantial evidence supporting Caltrans' finding of no significant impact. Petitioners' papers asserted, unequivocally, that to discharge either writ, "Caltrans must demonstrate to this Court that it has complied with CEQA, period."

In May 2023, while the motion to discharge both writs was pending, Caltrans demurred to the petition in this case, both on the merits and on the basis of res judicata and collateral estoppel, arguing the preclusive effect of the two prior judgments barred all but one issue in the present case (i.e., the adequacy of Caltrans' response to public comments). The demurrer was overruled and the case proceeded to briefing and a hearing on the merits.

On July 25, 2023, the court (the Hon. Timothy Canning) granted Caltrans' motion to discharge the *Lotus* and *Bair I* writs, in a one-page ruling stating no grounds.[13] *Petitioners did not appeal that ruling.*

Thereafter, in its briefing on the merits of this case, Caltrans argued that, in addition to the preclusive effect of the prior writ of mandate judgments, the discharge of the writs barred petitioners from challenging the Addendum's compliance with CEQA (other than with respect to two matters

---

[13] The record contains no order actually discharging either writ, but the parties raise no issue about that and treat the order granting Caltrans' motion as having done so. So will we.

15

that are not at issue in this appeal:  the adequacy of its response to public comments, and the procedural manner by which it re-approved the project and recertified the EIR).[14]  Discharge of both writs, it asserted, conclusively established that the new tree root analysis in the Addendum complies with CEQA.

The trial court (Judge Canning, presiding) agreed.  On November 13, 2024, it denied the petition in a five-page ruling.  The court held that "[a]fter the Court's discharge of the previous two writs which attacked various portions of the Project's EIR, . . . the only issue remaining is whether Caltrans' responses to the comments to the Addendum and its 2023 [EIR] recertification and Project approval complies [*sic*] with CEQA requirements. Issues that were or could have been raised in *Lotus* or *Bair I* are now barred, except the issues surrounding Caltrans' circulating the Addendum for public review and comment, and its further consultation with State Parks."  The court rejected petitioners' challenges concerning those two matters, and petitioners do not claim error in those rulings on appeal.  The trial court also held that "[e]ven if the substantive adequacy of the Addendum of the underlying Project under CEQA could be raised at this point, . . . [they] meet CEQA requirements."

A judgment denying the petition was entered, and this timely appeal followed.

## DISCUSSION

On appeal, petitioners argue that Caltrans' analysis of the project's impact on old-growth redwood trees is still flawed, principally for two reasons.  They argue the Addendum and Tree Report, like the EIR, fail to

---

[14]  Petitioners have not raised these issues in their briefs on appeal.

identify or use any threshold of significance to measure the project's impact on redwood trees, a yardstick they assert CEQA requires. They also argue Caltrans' conclusion that the project will not have a significant impact on old growth redwood trees is not supported by substantial evidence, principally taking issue with the tree rating methodology employed in the Addendum but also raising other issues.

As petitioners acknowledge, the trial court ruled that both of these issues are barred by res judicata,[15] but they assert the court erred in this regard. As we will discuss, we do not agree.

## I.

### *Standard of Review*

Application of res judicata is a question of law subject to de novo review. (*Oakland Bulk & Oversized Terminal, LLC v. City of Oakland* (2025) 112 Cal.App.5th 519, 544.)

## II.

### *Analysis*

Res judicata, or "claim preclusion" as the doctrine is now known, prevents relitigation of the "same cause of action" in a subsequent lawsuit between the same parties or their privities. (*Oakland Bulk & Oversized Terminal, LLC v. City of Oakland*, *supra*, 112 Cal.App.5th at p. 559.) It applies when the subsequent lawsuit " 'involves (1) the same cause of action (2) between the same parties (3) after a final judgment on the merits in the first suit.' " (*Ibid.*) It bars litigation not only of issues that were actually raised in the prior case but those that could have been, but were not, raised.

---

[15] Although the trial court did not expressly say so, that was clearly one basis for its ruling. (See, e.g., *Silverado Modjeska Recreation & Park Dist. v. County of Orange* (2011) 197 Cal.App.4th 282, 296, fn. 8 (*Silverado*).)

17

(*Federation of Hillside & Canyon Assns. v. City of Los Angeles* (2004) 126 Cal.App.4th 1180, 1202.)  The doctrine is intended to " 'relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication' [citation], thereby shielding litigants from undue harassment and avoiding the substantial time and expense associated with repetitive litigation.' " (*Guerrero v. Department of Corrections & Rehabilitation* (2018) 28 Cal.App.5th 1091, 1099.)  To promote, in a word, finality.  (See *ibid*. [claim preclusion rules "protect the integrity of courts by fostering finality and minimizing the potential for conflicting judgments, which serves to promote public confidence in the judicial process"].)

In challenging the trial court's claim preclusion ruling, petitioners argue only that there has been no decision on the merits concerning the Addendum's substantive adequacy.[16]  Their argument in this regard focuses mainly on the *Bair I* case, with the parties sharply disagreeing in pages of lengthy briefing as to whether the *Bair I* court *implicitly* decided (and rejected) petitioners' substantive attacks on the Addendum (when it entered a judgment and a writ directing Caltrans merely to publicly circulate the Addendum and consult with the Parks Department and not directing it to prepare a new analysis).  Petitioners argue that the court decided *Bair I* on only a procedural ground—namely, that the issue of its adequacy was

---

[16]  They do not argue that the other two elements of claim preclusion— identity of parties and causes of action—are not satisfied, thereby conceding these elements.  " ' "Even when our review on appeal 'is de novo, it is limited to issues which have been adequately raised and supported in [the appellant's opening] brief.  [Citations.]  Issues not raised in an appellant's brief are deemed waived or abandoned.' " ' " (*Cruz v. Tapestry, Inc.* (2025) 113 Cal.App.5th 943, 953-954.)

unripe—and therefore that neither the judgment issuing the limited writ in that case, nor the discharge of that writ, was a ruling on the merits that operates as res judicata. (See, e.g., *Association of Irritated Residents v. Department of Conservation* (2017) 11 Cal.App.5th 1202, 1218-1228 [res judicata no bar to second CEQA lawsuit where judgment dismissing prior CEQA lawsuit was based on lack of justiciability due to mootness and unripeness].) We need not resolve the parties' disagreement as to whether the *Bair I* judgment and/or discharge of the *Bair I* writ entailed a ruling on the merits of the claims at issue in this case. That is because regardless, the discharge of the *Lotus* writ conclusively established the Addendum's substantive adequacy and the discharge of *that* writ was final and therefore bars relitigation of the issue petitioners have raised again in this case.

*Silverado, supra,* 197 Cal.App.4th 282 is closely on point. In that case, a certified EIR was successfully challenged in writ proceedings that culminated in a judgment and writ compelling the lead agency to prepare and circulate a supplemental EIR evaluating the project's impact on water quality. (See *id.* at pp. 288, 291-292.) The lead agency then prepared the new analysis, circulated it for public comment and recertified the EIR. (*Id.* at pp. 293, 294.) The same parties then initiated a second proceeding challenging the recertified EIR, alleging it did not comply with the earlier writ. (*Id.* at p. 295.) As in this case, the lead agency then moved in the original case to discharge the writ, the motion was granted and the parties did not appeal its discharge. (*Ibid.*) The trial court in the second case then ruled that the challengers' attack on the lead agency's compliance with the writ was barred by res judicata, and on de novo review the appellate court affirmed. (See *id.* at pp. 295, 297-301, 314.)

19

*Silverado* held that claim was barred, because it "is based on the same primary right that the court in the [prior] action adjudicated in deciding the [lead agency's] motion to discharge the writ . . . ." (*Silverado, supra,* 197 Cal.App.4th at p. 298.)  The appellate court explained that "[t]he parties submitted a substantial administrative record concerning whether the water quality study complied with the writ and CEQA, and extensively briefed those issues on the motion to discharge the writ," and that the trial court unambiguously ruled that the lead agency complied with the writ and in so doing complied with CEQA " 'with respect to the issues alleged in the instant action.' " (*Silverado,* at p. 298.)  *Silverado* thus concluded that the court's discharge of the writ in the first case "reflects full adjudication of the issues and the primary right that plaintiffs sought to litigate" in the second case, and that "[t]he order discharging the writ in the [prior] action decided the merits of the issue of the county's compliance with the writ, and is final." (*Ibid.*; see also *id*. at p. 301 [order discharging the writ "constitutes a full and final adjudication of the issue of the county's compliance with the commands of the writ"]; cf. *Planning & Conservation League v. Castaic Lake Water Agency* (2009) 180 Cal.App.4th 210, 224, 225-233 (*PCL*) [where mandamus proceeding invalidated initial EIR but sufficiency of agency's return to writ was not adjudicated, res judicata no bar to second mandamus proceeding challenging validity of recertified EIR prepared in response to writ].)

This case is similar.  Like *Silverado,* the petition in this case alleges (both expressly and indirectly) that it seeks to compel Caltrans to fix the very same CEQA deficiencies that the *Lotus* writ compelled it to fix, and thus in substance is challenging Caltrans' compliance with the *Lotus* writ.  The petition not only characterizes this proceeding as connected to all of the prior

litigation[17] but that this lawsuit is necessary because "Caltrans continues to fail to meet its informational and analytical mandate under CEQA" and that petitioners were simultaneously objecting to discharge of the *Lotus* (and *Bair I*) writs on essentially the same ground. It alleges that "Caltrans failed to comply with *both writs* because the 2017 Addendum is legally inadequate as an informational and analytical document under CEQA." (Italics added.) It also alleges that in 2018 the trial court in *Lotus* "denied Caltrans' request to discharge the *Lotus* Writ, ruling that whether 2017 Addendum complied with CEQA was central to compliance with the *Lotus* writ." Likewise, in the papers they filed objecting to discharge of the *Lotus* writ, petitioners incorporated the petition filed in this case by reference. They also characterized this lawsuit as "alleging that the . . . Addendum's disclosure, analysis and mitigation of the Project's impacts to old-growth redwood trees and their root zones is inadequate, *and therefore Caltrans has failed to remedy the* [*EIR's*] *shortcomings as identified in Lotus*." (Italics added.) Furthermore, as we have noted, petitioners sought consolidation of all three cases on the ground that the central issue was precisely the same: whether Caltrans' analysis of the project's impacts on old-growth redwoods complies with CEQA. They asserted: "[T]he question of whether the 2017 Addendum constitutes CEQA-compliant environmental review is . . . central to resolution of both the return to writ proceedings (*Lotus* and *Bair I*) and [these]

_____

   [17] For example, it alleges that, "[c]onsistent with their decade-and-a-half pursuit of the Proposed Project, Respondent has ignored its obligations to adequately evaluate and consider the environmental impact of a proposed major highway construction project set to widen the highway through the ancient old-growth redwoods in violation of [CEQA]." It also alleges, "This case follows closely in the footsteps of its predecessor litigation because Caltrans is consistent in its legal failings."

21

proceedings.  [Citations.]  The . . . petition [in this case] challenges the substantive adequacy of the 2017 Addendum, alleging that it fails to properly disclose, analyze and mitigate the Project's impacts to the root zones of old-growth redwood trees in violation of CEQA.  *And the Lotus writ cannot be discharged until Caltrans has **'taken any and all actions necessary to comply with CEQA**,' and pursuant to the Court of Appeals' decision such compliance requires a CEQA compliant analysis of the Project's impacts to old-growth redwood trees.*"  (Italics added.)  And, as alleged in the petition, the trial court agreed in its ruling on May 15, 2018, when it initially declined to discharge the *Lotus* writ because that issue had yet to be decided.

As noted, petitioners do not contend that a different primary right was involved in the *Lotus* writ discharge proceedings, nor do they contend (nor could they on this record) that the *Lotus* writ required anything but preparation of a revised tree root analysis that fully complies with CEQA in accordance with the prior appeal.  (See, e.g., *Save the Capitol, Save the Trees v. Department of General Services* (2024) 101 Cal.App.5th 1237, 1248-1250 (*Save the Capitol*) [writ required lead agency to prepare revised, CEQA-compliant EIR consistent with prior appellate opinion].)  Thus, when the trial court later discharged the *Lotus* writ over their objections that the Addendum did not adequately analyze the project's impact on old-growth redwood trees, it necessarily decided the merits of that issue "and is final."  (*Silverado*, *supra*, 197 Cal.App.4th at p. 298.)

There is authority, not cited by the parties, that conflicts with *Silverado*, albeit not expressly.  *Central Delta Water Agency v. Department of Water Resources* (2021) 69 Cal.App.5th 170 (*Central Delta Water Agency*) held that an order discharging a writ that required a lead agency to prepare and certify a revised EIR that complies with CEQA did not preclude a CEQA

22

challenge to the revised EIR in a second proceeding, rejecting application of both res judicata and collateral estoppel. (See *Central Delta Water Agency,* at pp. 206-211.) The court articulated several alternative grounds, some not pertinent here. (See *id.* at pp. 208-211 [collateral estoppel held inapplicable because no identity of issues and no privity of parties].) But one basis for the decision was that res judicata did not apply because the issues in the second CEQA case could not have been litigated in the prior case in which the writ was discharged. (See *Central Delta Water Agency,* at pp. 206-208.) As we will explain, that aspect of the decision is analytically in tension with *Silverado* and we decline to follow it.

The basic facts of *Central Delta Water* are similar to this case and *Silverado.* The case involved interconnected agreements to allocate water on a statewide basis under long-term water supply contracts between the California Department of Water Resources (DWR) and local and regional water contractors. (See *Central Delta Water Agency, supra,* 69 Cal.App.5th at pp. 182-186.) As relevant here, DWR certified an initial EIR (in 1995, called the Monterey Agreement EIR) but, as in this case, it was challenged in court and on appeal was invalidated.[18] (See *Central Delta Water Agency,* at pp. 186-187.) The appellate court concluded that a new EIR needed to be prepared, and it directed the trial court to issue a writ of mandate decertifying the 1995 EIR and to retain jurisdiction until DWR certified a new EIR. (*Id.* at pp. 186-187.) In 2003, a writ issued directing DWR to prepare and certify a new EIR that complied with CEQA. (*Central Delta*

---

[18] It was invalidated both on substantive grounds and because it had been prepared by the wrong lead agency (i.e., by a joint powers agency rather than by DWR). (See *Central Delta Water Agency, supra,* 69 Cal.App.5th at pp. 182-186.)

23

*Water Agency,* at p. 206.) As in this case, DWR then prepared and certified a new EIR (in February 2010, called the Monterey Plus EIR). (*Id.* at p. 188.) A second petition for writ of mandate was then filed against DWR (by a different party, referred to as Central Delta), challenging the sufficiency of the revised EIR. (See *ibid.*). While that second case was pending, the trial court discharged the writ in the first case (in August 2010), finding that DWR had fully complied with it. (See *id.* at p. 206.)

On appeal, *Central Delta Water* held that the order discharging the writ did not bar the CEQA cause of action challenging the revised EIR in the second mandamus proceeding. (*Central Delta Water Agency, supra,* 69 Cal.App.5th at p. 207.) Although it recognized that the order discharging the writ in the first action was "a decision both final and on the merits" (*id.* at p. 206), it held res judicata was inapplicable because the petitioner in the second proceeding "challenges deficiencies in the [revised] EIR, which the [petitioners in the first proceeding] could not have challenged in their 1995 petition for writ of mandate." (*Id.* at p. 208.) It went on to explain that, "[a]fter ruling for the [petitioners in the first proceeding], the trial court issued a writ of mandate ordering decertification of the [original] EIR and preparation of a new environmental impact report by a different agency. We agree with the trial court that the [first] litigation and the current litigation address different reports that are 'factually distinct attempts to satisfy CEQA's mandates.' " (*Id.* at p. 208.)

*Central Delta Water Agency*'s analytical flaw is that it asked the wrong question. It focused on whether the revised EIR's substantive adequacy could have been litigated *before entry of judgment* in the first mandamus proceeding. Of course it could not have been; just as in *Silverado,* it didn't exist at that juncture. As in *Silverado,* DWR's sole reason for preparing it

24

was to comply with the writ directing it to fix the deficiencies in the original EIR by preparing a new EIR that complies with CEQA. *Central Delta Water Agency* did not ask, but should have, whether the revised EIR's compliance with CEQA could have been adjudicated *in response to DWR's postjudgment request to discharge the writ*. That is the mode of analysis employed in *Silverado* and we agree with it. (See *Silverado*, *supra*, 197 Cal.App.4th at p. 298.) *Central Delta Water Agency'*s analysis is thus confusing and unhelpful. It also does not acknowledge or address *Silverado'*s holding. To the extent they are in conflict, we find *Silverado* better reasoned and follow it here.

Petitioners posit several reasons *Silverado* is distinguishable, but none are persuasive.

First, they assert that the adequacy of the Addendum was not adjudicated in the *Lotus* return to writ proceedings because, unlike in *Silverado,* the full administrative record of the recertified EIR and Addendum was not before the court when it discharged the *Lotus* writ. Thus, they argue, "[t]he facts of the writ proceeding here do not come close to the evidentiary review and analysis that supported res judicata in *Silverado*."

The distinction is unpersuasive. Petitioners cite no authority that the court was precluded from discharging the writ in these circumstances; nor do they address whose burden it was to provide any supplemental administrative record if one was required.[19] More importantly, such concerns

---

[19] Their only citation is to section 21167.6 of the Public Resources Code, governing preparation of the administrative record in CEQA litigation, the plain language of which does not address this issue. As relevant here, it merely requires the petitioner in a CEQA case to file a request "[a]t the time that the action or proceeding is filed" that the agency prepare the administrative record (Pub. Resources Code, § 21167.6, subd. (a)) and

25

have no bearing on whether discharge of the *Lotus* writ was on the merits. They are just another way of saying the court erred when it discharged the *Lotus* writ in the absence of a more complete administrative record. Petitioners could have appealed the ruling if they believed the *Lotus* court erred in this regard, but they did not do so. (See *Ballona Wetlands Land Trust v. City of Los Angeles* (2011) 201 Cal.App.4th 455, 464, fn. 2 [order discharging writ in CEQA case is an appealable, postjudgment order].) Right or wrong, the court's discharge order *was* on the merits, and it precludes relitigation of the primary right that it vindicates. As recognized in the very authority petitioners now cite, the preclusive effect of a prior judgment or order does not depend on whether the decision was *correct*. (See *Association of Irritated Residents v. Department of Conservation, supra,* 11 Cal.App.5th at p. 1225, fn. 18; see also generally *Meridian Financial Services, Inc. v. Phan* (2021) 67 Cal.App.5th 657, 701-702.)

Petitioners also say the ruling was not on the merits because, unlike in *Silverado*, the *Lotus* court did not expressly rule on whether the Addendum's analysis complied with CEQA when it discharged the writ. To the extent they imply that the trial court was required to make express findings in discharging the writ, or that application of claim preclusion requires a determination on the merits that is explicit, they cite no authority for either proposition. Further, it is well established that when interpreting the meaning of a judgment, "we examine the entire record to determine the scope

specifies that the petitioner may elect to prepare the record itself (*id*., subd. (b)(2)). Furthermore, assuming without deciding that the writ discharge proceedings are a "proceeding" within the meaning of this provision, petitioners do not assert that they *asked* Caltrans to prepare the full administrative record concerning its preparation of the Addendum in connection with the writ discharge proceedings.

26

and effect of a judgment and decree," including the "context" in which it was entered and "the circumstances of the case." (*Dow v. Lassen Irrigation Co.* (2022) 79 Cal.App.5th 308, 326; accord, *SLPR, L.L.C. v. San Diego Unified Port Dist.* (2020) 49 Cal.App.5th 284, 299 [" 'If an order [or judgment] is ambiguous, the reviewing court may examine the record for its scope and effect and may look at the circumstances of its making' "].) As is plainly evident from the trial court's May 15, 2018 ruling in *Lotus* and the content of the extensive briefing filed thereafter in connection with the *Lotus* writ discharge proceedings, such issues were decided—indeed, they were the *only* issues decided—and petitioners offer no developed argument to the contrary. They just ignore the entire record on that subject. At bottom, their assertion that the merits were not adjudicated in the *Lotus* writ discharge proceedings is conclusory. And it begs the obvious question: if discharge of the *Lotus* writ did not decide whether the Addendum fully complied with CEQA then what *did* it decide?

Finally, citing *City of Carmel-by-the-Sea v. Board of Supervisors* (1982) 137 Cal.App.3d 964 (*City of Carmel-by-the-Sea*), petitioners argue discharge of the *Lotus* writ does not have preclusive effect because they are permitted to challenge Caltrans' compliance with the writ in a separate proceeding. The short answer is, that assertion is directly refuted by *Silverado*. The parties in *Silverado* did precisely that (i.e., initiated a new writ proceeding to challenge the lead agency's compliance with a previously issued writ), yet when the trial court discharged the writ in the original proceeding, thereby adjudicating their compliance with CEQA, the parties were barred from continuing to assert the same claim in the second writ proceeding. (See *Silverado, supra*, 197 Cal.App.4th at pp. 297-301.)

27

The long answer is, neither *City of Carmel-by-the-Sea* nor its progeny address this claim preclusion issue. *City of Carmel-by-the-Sea*, a non-CEQA case, holds merely that a trial court may adjudicate the adequacy of an agency's return to a writ of administrative mandate in the original writ proceeding, and that a new writ proceeding need not be initiated for that purpose. (*City of Carmel-by-the-Sea, supra,* 137 Cal.App.3d at p. 971.) In dictum, it also explains that filing a new writ proceeding to challenge compliance with the writ would be *proper*.[20] But even then, it does not say that both options can be pursued simultaneously much less opine that, if they are, res judicata might not at some point present an obstacle.

Nor do any of the CEQA cases that follow in *City of Carmel-by-the Sea*'s footsteps. While some suggest that filing a new proceeding to challenge a party's compliance with a writ previously issued in a CEQA case is permissible, none address whether doing so will be barred by res judicata and/or collateral estoppel if both paths are pursued simultaneously and the writ is discharged on the merits before the new proceeding concludes. (See *Save the Capitol, supra,* 101 Cal.App.5th at pp. 1246-1247 [dicta that "Where the peremptory writ directs the public agency to take specific action and the return states that the court's mandate has been carried out, the petitioner

_____

[20] It explained: "Where, as here, the writ remands the matter to the administrative body with directions to proceed in a certain manner, and the return states that the court's mandate has been carried out, the petitioner may challenge the validity of that claim in one of several ways. Petitioner may proceed by a new petition under Code of Civil Procedure section 1094.5, or by supplemental petition (using the original action number). [Citations.] But the petitioner is not required to proceed by writ; if it or the court is not satisfied with the return, the court may, on its own motion or on that of the petitioner, either oral or written, order the respondent to reconsider further." (*City of Carmel-by-the-Sea, supra,* 137 Cal.App.3d at p. 971.)

28

may challenge the validity of that claim by new or supplemental writ; but the petitioner is not required to proceed by writ and may challenge the writ return as failing to demonstrate compliance with CEQA," citing *City of Carmel-by-the-Sea*]; *PCL, supra*, 180 Cal.App.4th at pp. 227-228 [observing that under *City of Carmel-by-the-Sea*, petitioner in original CEQA case was not required to litigate agency's compliance with writ in that case, and holding that where it did not do so new CEQA proceedings challenging lead agency's writ compliance were not barred by res judicata]; cf. *Environmental Protection Information Center, Inc. v. State Bd. of Forestry* (1993) 20 Cal.App.4th 27, 31-32 [distinguishing *City of Carmel-by-the-Sea* and holding a new action must be filed to challenge compliance with a CEQA writ denominated as "alternative"].)

*Silverado* questioned whether a trial court would have jurisdiction to adjudicate compliance with a CEQA writ in a new, independent action but did not reach the question. (See *Silverado, supra*, 197 Cal.App.4th. at p. 301, fn. 12.) And neither will we.[21] No party has raised that issue, and we do not

_____

[21] Resolution of that question implicates section 21168.9 of the Public Resources Code*,* which specifically governs a trial court's jurisdiction to enforce compliance with a writ of mandate in CEQA litigation. It provides that if a trial court finds "as a result of a trial, hearing, or remand from an appellate court, that any determination, finding, or decision of a public agency has been made without compliance with [CEQA]," the court must issue a peremptory writ of mandate. (Pub. Resources Code, § 21168.9, subd. (a).) It also specifies that "[t]he trial court *shall retain jurisdiction over the public agency's proceedings by way of a return to the peremptory writ* until the court has determined that the public agency has complied with [CEQA]." (*Id.,* § 21168.9, subd. (b), italics added.) This provision was not implicated in *City of Carmel-by-the-Sea* (a non-CEQA case), and raises a significant question as to whether the general principles discussed in that case concerning the procedural vehicles for litigating writ compliance extend to CEQA cases. (See *Silverado, supra*, 197 Cal.App.4th. at p. 301, fn. 12; but

29

need to resolve it. Assuming without deciding that filing a new writ proceeding to challenge compliance with a peremptory writ issued *in a CEQA case* is procedurally and jurisdictionally proper, the trial court nonetheless correctly ruled that claim preclusion bars petitioners' claims in this proceeding. Petitioners offer no persuasive reason why, if a party *does* initiate a new writ proceeding to challenge an agency's compliance with a peremptory writ issued in a CEQA case, the CEQA claim in the second proceeding will continue to be legally viable if, as occurred here and in *Silverado*, the peremptory writ in the original proceeding is discharged while the second proceeding is still pending. Litigating a lead agency's compliance with such a writ simultaneously in multiple separate proceedings creates confusion and sets up a classic (and self-inflicted) race to judgment. And here, petitioners lost the first of their cases to reach finality and thereby lost the race.[22]

As we recently had occasion to lament, CEQA litigation sometimes threatens to become a never-ending battle over certification of an environmental impact report that can drag on for years, even decades. (See

_____

see *PCL*, *supra*, 180 Cal.App.4th at p. 228, fn. 11 [stating that Pub. Res. Code § 21168.9 does not vest exclusive jurisdiction in the issuing court to enforce compliance with CEQA writ because, under *City of Carmel-by-the-Sea*, "the petitioner may challenge the agency's action that purports to comply with the writ in *a new action*"].)

[22] Assuming that a multiplicity of proceedings to adjudicate CEQA writ compliance is procedurally proper notwithstanding Public Resources Code section 21168.9, subdivision (b), the potential trap of claim preclusion might be avoided by consolidating such proceedings. (See *Save the Capitol, supra,* 101 Cal.App.5th at p. 1249.) Here petitioners sought to consolidate all three cases, but they did not seek review of the ruling declining to do so (either in *Lotus* or in this case) and thereby allowed the cases to proceed independently, on different timeframes.

*Tiburon Open Space Committee v. County of Marin* (2022) 78 Cal.App.5th 700, 781-783). What we said there is worth repeating: "CEQA was meant to serve noble purposes, but it can be manipulated to be a formidable tool of obstruction . . . ." (*Id.* at p. 782.) Caltrans' work on the current environmental analysis that is embodied in the Addendum alone began in 2015, and in the 10-plus years since, not a single trial court judge has concluded the Addendum's analysis is flawed. Plaintiffs could have appealed the trial court's order discharging the *Lotus* writ but chose not to do so. The Addendum's sufficiency as a CEQA-compliant analysis of the park's old-growth redwood trees has been conclusively adjudicated and may not be relitigated. This CEQA battle has come to its end.

## DISPOSITION

The judgment is affirmed. Respondents shall recover their costs.

STEWART, P. J.

We concur.

RICHMAN, J.

MILLER, J.

*Bair et al. v. California Dept. of Transportation et al.* (A172681)

Trial Court:  Humboldt County Superior Court

Trial Judge:  Hon. Timothy A. Canning (Lead); Hon. John T. Feeney

Counsel:

Gross Klein, Stuart G. Gross and Ross A. Middlemiss, for Plaintiffs and Appellants.

California Department of Transportation, Erin Holbrook, G. Michael Harrington, Lucile Y. Baca, and Alina Stark, for Defendants and Respondents.